**Richard Dean HESTAD and Kenneth Patrick Cupit, Petitioners-Appellees,**

v.

**UNITED STATES of America and Keith C. Hardie, U. S. Marshal, Respondents-Appellants.**

**Nos. 17398, 17404.**

United States Court of Appeals
Seventh Circuit.

Nov. 7, 1969.

Edmund A. Nix, U. S. Atty., John E. Clarke, Atty., Madison, Wis., for appellants.

Paul E. Goldstein, Chicago, Ill., amicus curiae.

Victor V. Blackwell, Covington, La., Kenneth S. Jacobs, Villa Park, Ill., for appellees.

Before SWYGERT and CUMMINGS, Circuit Judges and CAMPBELL, Chief District Judge.[1]

SWYGERT, Circuit Judge.

This is a consolidated appeal from orders granting the petitions of Richard Dean Hestad and Kenneth Patrick Cupit for relief under 28 U.S.C. § 2255. After a hearing on the petitions, the district court vacated the sentences imposed up-

1. Chief Judge William J. Campbell is sitting by designation from the United States District Court for the Northern District of Illinois.

on the petitioners following their conviction for violation of the Universal Military Training and Service Act.

Each petitioner was charged in an information with failure to obey an order of his respective draft board to report for civilian work in lieu of induction into the armed forces. Hestad was tried on September 25, 1967 and Cupit was tried the next day. Both petitioners were adjudged guilty and a prison sentence was imposed in both cases on October 25, 1968.

Subsequent to petitioners' conviction but prior to the imposition of sentence, the Court of Appeals for the Ninth Circuit decided Brede v. United States, 396 F.2d 155 (9th Cir. 1968), modified on petition for rehearing, 400 F.2d 599 (1968). That case held that the failure of a local draft board to comply with the requirements of selective service regulation § 1660.20(d) [2] constitutes a defense to the charge of failure to report for civilian work in lieu of induction. Although the requirements for compliance with the regulation differ in the original Brede decision and the decision on rehearing (hereinafter Brede I and Brede II), the essential requirement in both decisions is that the board must deliberate upon and approve a reasonably definite proposition ordering the registrant to report for specific civilian work in lieu of induction.

The petitioners alleged noncompliance with the standards of both Brede I and Brede II and it is on the basis of these decisions that they sought relief under § 2255. Since the Brede defense had not been asserted at trial, the petitioners decided that the issue would not be cognizable on appeal of their convictions and, therefore, immediately after sentence was imposed, filed petitions pursuant to § 2255 seeking release from custody. The district court held an evidentiary hearing to determine whether the Brede decisions constituted a ground for release of the petitioners from custody.

The selective service file of each of the petitioners was introduced into evidence and disclosed the following facts concerning the orders under which they were convicted. Hestad was classified I-O by his local board on October 5, 1964. He sought administrative review of the denial of his request for a IV-D classification but his I-O status was upheld on appeal. In August 1965 the local board began processing Hestad for civilian work pursuant to selective service regulation 32 C.F.R. § 1660.20.[3]

2. 32 C.F.R. § 1660.20(d) reads in part:
(d) If, after the meeting referred to in paragraph (c) of this section, the local board and the registrant are still unable to agree upon a type of civilian work which should be performed by the registrant in lieu of induction, the local board, with the approval of the Director of Selective Service, shall order the registrant to report for civilian work. * *

3. 32 C.F.R. § 1660.20(a), (b) and (c) reads in pertinent part:
When a registrant in Class I-O has been found qualified for service in the Armed Forces after his armed forces physical examination * * * he shall within ten days after a Statement of Acceptability (DD Form No. 62) has been mailed to him by the local board * * * submit to the local board three types of civilian work contributing to the national health, safety, or interest as defined in section 1660.1, which he is qualified to do and which he offers to perform in lieu of induction into the Armed Forces. If the local board deems any of these types of work to be appropriate, it will order the registrant to perform such work, but such an order shall not be issued prior to the time that the registrant would have been ordered to report for induction if he had not been classified I-O, unless he has volunteered for such work.
(b) If the registrant fails to submit to the local board types of work which he offers to perform, or if the local board finds that none of the types of work submitted by the registrant is appropriate, the local board shall submit to the registrant by letter three types of civilian work contributing to the national health, safety, or interest as defined in 1660.1 which it deems appropriate for the registrant to perform in lieu of induction. The registrant, within ten days after such letter is

Hestad was informed by the board of three civilian work alternatives and on September 20, 1965, petitioner met with the local board and the representative of the State Director pursuant to 32 C.F.R. § 1660.20(c) for the purpose of seeking agreement on the type of civilian work the petitioner would perform in lieu of induction. The petitioner and the board failed to reach agreement and the following minutes of that meeting were entered on SSS Form 100 in Hestad's selective service file:

> Registrant met with board and Colonel Silbernagel (State Director's representative) and unable to reach an agreement; board recommends Director approve of Madison General Hospital,—hospital work—Madison, Wisconsin as his work in lieu of induction. John P. O'Brien. 5–0. [Vote of the local board.]

On November 8, 1965 the State Director forwarded this information to the National Director, saying in part:

> His [Hestad's] Local Board has determined that hospital work in the Madison General Hospital, Madison, Wisconsin, would be suitable civilian employment in lieu of induction.

On December 6, 1965 the local board received notification from the State Director that the local board's action had been approved by the National Director. On December 16, 1965 an order to report for civilian work signed by the clerk of the local board was mailed to the petitioner. This document stated that petitioner had "been assigned to hospital work located at Madison General Hospital" and that he was to report to the local board on January 6, 1966 to receive instructions to proceed to the place of employment. Hestad failed to

report and subsequently was convicted on an information alleging noncompliance with this order.

Cupit's selective service record is similar. On May 19, 1964 Cupit was classified I-O. He sought to have his classification changed to IV-D, but was unsuccessful. Processing of the petitioner for civilian work began and on November 5, 1965 Cupit was informed of three civilian work alternatives by the clerk of the board. On May 17, 1966 Cupit met with the local board and the representative of the State Director pursuant to 32 C.F.R. § 1660.20(c) in an attempt to reach agreement concerning the civilian work he would perform in lieu of induction. No agreement was reached and the following minutes of that meeting were entered on SSS Form 100 in Cupit's file:

> Registrant met with Local Board and State Director's representative as required by SS Reg. 1660.20(c). No agreement reached. Local board determined to request approval of issuance of order to direct registrant to appropriate work, Evanston Hospital Association, Evanston, Ill.

> Statement submitted, Certificate for Servant in Congregation.

> Classified I-O. 5–O [Vote of the local board.]

This information was forwarded to the National Director and on August 5, 1966 the local board received approval of its civilian work recommendation from General Hershey. On the same day an order to report for civilian work signed by the clerk of the local board was mailed to Cupit. The petitioner failed to report to the Evanston Hospital Association on August 25, 1966 as required by this order. However, in a letter dated August

---

mailed to him by the local board, shall file with the board a statement that he offers to perform one of the types of work submitted by the board, or that he does not offer to perform any of such types of work * * *.

(c) If the local board and the registrant are unable to agree upon a type of civilian work which should be per-

formed in lieu of induction, the State Director of Selective Service for the State in which the local board is located, or the representative of such State Director, appointed by him for the purpose, shall meet with the local board and the registrant and offer his assistance in reaching agreement.

24, 1966, Cupit informed the board that he was "reappealing" the denial of his IV-D classification. Petitioner's I-O classification was affirmed by his local board on September 13, 1966 and on November 22, 1966 the State Director recommended that the August 5 order be cancelled because of procedural irregularity. On November 23, 1966 another order was issued and signed by the clerk of the local board requiring the petitioner to report to the local board on December 7, 1966 for the civilian work assignment. Cupit was subsequently prosecuted for his failure to report to the local board in compliance with the terms of this order.

On the basis of the petitioners' selective service files and testimony concerning administrative practice presented by the Government, the district court found that insufficient evidence existed in the record to demonstrate that the local board engaged in the "critical exercise of administrative judgment" required by *Brede II.* Cupit v. United States, 292 F.Supp. 146 (1968); Hestad v. United States, 302 F.Supp. 1188 (W.D.Wis., Oct. 29, 1968). In this determination, we hold the district court erred.

I

As a preliminary issue the Government contends that a motion under § 2255 was improper in these cases and should not have been entertained by the district court since the petitioners did not exhaust their right to appeal. This alleged error, the Government maintains, precludes us from reaching the merits of this appeal. We disagree.

Convictions in criminal cases are not ordinarily subject to collateral attack for errors which can be corrected on appeal. Sunal v. Large, 332 U.S. 174, 67 S.Ct. 1588, 91 L.Ed. 1982 (1947); Pelley v. United States, 214 F.2d 597 (7th Cir. 1954). The Government underestimates, however, the power of the district court to remedy its own errors in exceptional cases [4] and our own power to hear the merits of cases in which relief has been sought by the wrong procedure in the district court.[5] We think that in the interest of justice we should reach the merits of the district court's decisions to grant relief under § 2255.

We believe our position is justified by the factual setting in which the petitioners sought relief. When the *Brede* decisions were rendered, more than seven days had passed since the conviction of the petitioners. Thus the time in which motions for a new trial under Fed.R. Crim.P. 33 or in arrest of judgment under Fed.R.Crim.P. 34 could be filed had passed. No provision of the Federal Rules of Criminal Procedure or the Judicial Code clearly points to an appropriate remedy in this setting.

The district court's action in granting immediate relief is further recommended by considerations of judicial economy. Petitioners maintain that an appeal would have been an ineffective remedy since their failure to raise the *Brede* defense at trial would have prevented its consideration by this court on appeal. However, we may always remedy clear error on appeal under Fed.R.Crim.P. 52(b). Sykes v. United States, 373 F.2d 607, 612 (5th Cir. 1966). Yet, if we had

---

4. Even in situations in which habeas corpus relief is improper, a district court, under 28 U.S.C. § 1651 may sometimes grant relief in the nature of a writ of error coram nobis to relieve clear error in a previously rendered conviction. United States v. Morgan, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954); Mathis v. United States, 369 F.2d 43 (4th Cir. 1966).

5. A court of appeals is empowered to grant habeas relief in exceptional circumstances.

Adams v. United States ex rel. McCann, 317 U.S. 269, 273–275, 63 S.Ct. 236, 87 L.Ed. 268 (1942). It follows a fortiori that in exceptional cases we can consider the merits of an appeal from relief granted pursuant to § 2255 regardless of whether that section was the appropriate procedural form by which to grant relief. Cf. Rini v. Katzenbach, 374 F.2d 836 (7th Cir. 1967); Gajewski v. United States, 368 F.2d 533 (8th Cir. 1966).

considered the *Brede* defense on appeal we might have been required to remand for an evidentiary hearing to determine the validity of the order of the local board. Following such an evidentiary hearing these cases might have been before us again in their present posture. Thus the immediate remedy provided by the district court eliminated the possibility of a second appeal and aided substantially in achieving efficient judicial adminstration. We now proceed to the merits of the petitions.

## II

The correctness of the district court's determination in these cases depends upon the requirements of selective service regulation § 1660.20(d) and upon whether those requirements were complied with by the local boards. Our view of the requirements of that regulation is strongly influenced by the decisions in the *Brede* opinions.

The Ninth Circuit in its original *Brede* opinion held that the failure of the local board to meet and formally order the registrant to report for civilian work after the board received approval from the National Director of its preliminary recommendations constituted a defense to the charge of refusal to report for civilian work in lieu of induction. Upon rehearing, the reversal of the defendant's conviction was upheld, but the rationale for the decision was modified in two respects. Brede v. United States, 400 F.2d 599 (9th Cir. 1968). First, the court held that, although the local board must order a registrant to report for a specific civilian job, the meeting at which such an order is made need not occur after approval is received from the National Director. Second, the court suggested that in an appropriate case the determination by the board recommending that the registrant be assigned to certain civilian work may constitute the "critical exercise of administrative judgment" underlying the issuance of an order pursuant to § 1660.20(d). Thus a recommendation made by the board following

a meeting with the registrant as required by § 1660.20(c) may constitute an "implied order" to report for such work, subject to authorization by the National Director and notice to the registrant, if the record discloses that such action by the board comports with its usual administrative construction and practice.

The petitioners argue that at no time, either before or after the authorization by the National Director, did the respective local boards issue an order to the registrants to report for civilian work in compliance with § 1660.20(d). They maintain that, at most, the board indicated in its minutes of the meetings with the registrants that a particular work was appropriate; further, that the orders received by the registrants following the approval of the Director were sent by the clerk without authorization. Finally, the petitioners contend that the regulation does not permit the clerk to act upon an "implied" conditional order for the registrant to perform a certain type of civilian work.

The district judge took a similar view. He ruled that the board must "deliberate upon and approve a reasonably definite and precise proposition, namely, that a given registrant is required to perform a given act." While agreeing with *Brede II* that board action need not take place after the approval by the National Director, the court found upon the record before it that the boards at no time took the requisite action of deliberating upon and approving a "reasonably definite and precise proposition," and such action could not be implied by the boards' conduct.

The Government urges that we follow *Brede II* and that these are appropriate cases for the application of the implied order theory suggested by the Ninth Circuit. We agree. The evidence demonstrates that the recommendation arrived at by the board following its meeting with the registrant in each case constituted an implied conditional authorization for the issuance of an or-

der to report for a specified civilian job.

Primary emphasis must be placed upon the minutes in the selective service files of each petitioner recording the recommendation made by the board. The language of these minutes shows that the board in each case deliberated upon and recommended that the petitioner be ordered to perform a specific civilian task. Although the recommendation was not to become effective until approval by the National Director, the board in each case considered the situation of the petitioner individually and with care.

This evidence was supplemented by testimonial proof of the administrative practice of the Wisconsin draft boards. The district court made the following finding of fact with respect to that practice:

> The fact, as I hereby find, that it was the custom and practice among local boards in Wisconsin at the time, if no agreement could be reached with a registrant as to the type of civilian work to be performed in lieu of induction, to determine the type of work that would be appropriate for the registrant to perform; to request approval through the State Director by the National Director of the issuance of an order to direct the registrant involuntarily to perform this type of work; and to allow the clerk, upon notification from the National Director that the issuance of such an order had been approved, to sign and to mail to the registrant an order to report at a given time and place to commence this work.

The district court further found that the draft boards in the cases before us had fully complied with this custom and practice.

We are persuaded that in each of these cases, the local board intended to exercise its administrative judgment subject to the approval of the National Director when it recommended a specific work assignment for the petitioner. When approval was received, the ministerial duty of issuing an order directing the registrant to report for civilian work was properly performed by the clerk of the local board.

Our holding is consistent with the decisions of two other circuits on the same question. The Fourth Circuit in United States v. Crowley, 405 F.2d 400 (1968), was faced with facts almost identical to those before us. The defendant's selective service file contained, in memorandum form, the recommendation of the board arrived at following its meeting with the defendant. The court upheld the defendant's conviction on the basis of this memorandum, stating that the recommendation of the board alone was sufficient to satisfy the requirements of 32 C.F.R. § 1660.20(d). In a somewhat broader ruling, the Fifth Circuit in Davis v. United States, 402 F.2d 513 (1968), held that the defendant's selective service record without reference to a recordation of the board's recommendation in a specific memorandum constituted the critical exercise of the board's judgment required by the regulation.

Our holding and the decisions in *Crowley* and *Davis* are consistent with the ordinary manner of interpreting selective service regulations. In the absence of evidence to the contrary there is a presumption in favor of regularity of official proceedings of the board. Rhyne v. United States, 407 F.2d 657 (7th Cir. 1969); Yeoman v. United States, 400 F.2d 793 (10th Cir. 1968). Here the local boards followed ordinary and regular procedures. The boards considered the petitioners' cases and recorded their recommendations. When approval from the National Director was received, they promptly informed the petitioners of their duty to report for civilian work. The record is devoid of any prejudice resulting to the petitioners from the procedures employed in these cases.

The orders granting the petitioners' motions are reversed.