Robert ANDRE, Petitioner,

v.

Stanley R. RESOR, Secretary of the Army, et al., Respondents.

No. C–70 678.

United States District Court, N. D. California.

May 22, 1970.

Mark Susnow, Michael S. Sorgen, San Francisco, Cal., for petitioner.

James L. Browning, U. S. Atty., Richard F. Locke, Asst. U. S. Atty., San Francisco, Cal., for respondents.

## ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

ZIRPOLI, District Judge.

■ Petitioner was inducted pursuant to the delinquency regulations, 32 C.F.R. § 1642.1–1642.46, for failure to keep his local Selective Service Board informed of his current address. Petitioner was therefore inducted unlawfully under the holding of Gutknecht v. United States, 396 U.S. 295, 90 S.Ct. 506, 24 L.Ed.2d 532 (1970). See also Breen v. Selective Service Local Board No. 16, 396 U.S. 460, 90 S.Ct. 661, 24 L.Ed.2d 653 (1970). The two issues before this court are whether or not petitioner has waived his right to raise Gutknecht at this time, and whether Gutknecht is to be applied retroactively.

Andre submitted to induction on April 9, 1969 and did not file his petition for a writ of habeas corpus until March 31, 1970, a period of almost a full year. The government argues that such delay has in effect waived any defect in his induction. The government admits that petitioner had only two alternatives: (1) he could have refused induction and faced a possible five years and $10,000 fine; (2) he could have submitted to induction and brought a habeas corpus challenge.

■ The first choice is a choice only in the purest existentialist sense. One does not have to actively pursue a possible lengthy jail sentence in order to protect himself against waiver of his constitutional rights.

The second alternative is in fact the one petitioner chose. The critical date as to his filing of a habeas petition is not to be measured by his date of induction, but rather the date that he became aware of the Gutknecht decision and its applicability to his situation.

■ A person cannot by-pass nor waive a right he has no knowledge of; the standard to apply is whether petitioner deliberately intended to forego a legal right he was aware of and fully comprehended. See e. g. Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).[1]

■ Here, petitioner filed his request within a few months of the decision in Gutknecht; certainly, such a brief period does not constitute waiver.

■ The second issue is whether Gutknecht should be given retroactive effect. There are two ways to approach the question of retroactivity. The first is to determine whether it applies at all to the type of case involved herein. The second is to concede its applicability and then to balance the competing interests. Under either approach the court finds for the following reasons that the petitioner is entitled to discharge.

With regard to the first approach the court finds that the doctrine of retroactivity is not applicable. Retroactivity has been used in cases dealing with criminal proceedings where "new standards" are put forth. These standards relate to the procedural protections of a criminal defendant.

In the case before the court the petitioner attacks a civil proceeding, arguing that the action his draft board took pur-

---

1. The government argues that the discussion in United States v. Gearey, 368 F.2d 144 (2d Cir. 1969), of waiver is applicable to this case. Gearey was deciding the validity of 32 C.F.R. 1625.2. It stated that if a person's claim for conscientious objector status had matured prior to induction he had to raise it prior to such induction. This is perfectly consistent with the principle that one must raise a defense which is known to him at the time.

However, Gearey held that when a claim matures after induction there is no waiver of that right because it was not raised before induction. That decision is analogous to the situation herein where there is no claim which the petitioner is aware of until after the Gutknecht opinion. See also Standard Industries v. Tigrett, 397 U.S. 586, 90 S.Ct. 1310, 25 L.Ed.2d 590 (April 20, 1970); Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

suant to the delinquency regulations was *ultra vires*. There is no need to consider whether the board denied petitioner any procedural rights. The question is solely whether the board had any authority to order him to submit to induction. *Gutknecht* holds that no such authorization was present.[2]

The same approach was taken in the case of Wehrmeyer v. Commanding Officer, 313 F.Supp. 1001 (W.D.Mo., Jan. 29, 1970), in which the court stated the following:

> "We stayed our decision in this case pending that of the Supreme Court in Gutknecht v. United States, 396 U.S. 295, 90 S.Ct. 506, 24 L.Ed.2d 532 (1969). *Gutknecht* expressly overturns the validity of the delinquency regulations under which this petitioner's induction was accelerated.

> "Under the rationale of *Gutknecht*, it is obvious that petitioner's induction was wrongful, as he was inducted out of his normal order of call, and therefore petitioner must be discharged forthwith from the United States Army. When we say 'discharged' we mean exactly that. Petitioner is not to be put in any worse position by reason of his wrongful induction than he would be in had he never been inducted. He is not to be placed in a reserve unit, for instance."

A different approach involves the use of the doctrine of retroactivity. The court has grave doubts as to whether such an analysis should be applied in any respect to this case.

The retrospective effect of a law-making opinion is to be determined by " '(a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards.' " Desist v. United States, 394 U.S. 244, 249, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969). It is also clear that the factors of reliance and burden on the administration of justice are of significant relevance only when the question of retroactivity is a close one after the purpose of the new rule is considered.

Fully retroactive decisions are seen as vindicating a right which is essential to a reliable determination of whether an accused should suffer a penal sanction.[3]

On the other hand, decisions which have been denied retroactive effect are seen as vindicating interests which are collateral to or relatively far removed from the reliability of the fact-finding process at trial.[4]

The more directly the rule in question serves to preclude the conviction of innocent persons, the more likely it is that the rule will be afforded retrospective application. Further, if the rule relates to characteristics of the judicial system which are essential to minimizing convictions of the innocent, it will apply retroactively regardless of the reliance of prosecutors on former law, and regardless of the burden which retroactivity will place upon the judicial system.

2. See Breen v. Selective Service Local Board No. 16, 396 U.S. 460, 90 S.Ct. 661, 24 L.Ed.2d 653 (1970) ; Shea v. Mitchell, 137 U.S.App.D.C. 227, 421 F.2d 1162 (1970), 2 SSLR 3464; United States v. Mallory, 305 F.Supp. 915 (N.D.Cal., Nov. 3, 1969) ; United States v. McClintock, 311 F.Supp. 1119 (N.D.Cal., Apr. 15, 1970).

3. See Berger v. California, 393 U.S. 314, 89 S.Ct. 540, 21 L.Ed.2d 508 (1969) ; Roberts v. Russell, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968) ; Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968) ; Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) ; Hamilton v. Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed. 2d 114 (1961).

4. See Halliday v. United States, 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969) ; Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967) ; Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966) ; Tehan v. United States ex rel. Shott, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966).

The government points to Thompson v. Parker, 308 F.Supp. 904 (M.D.Pa.1970), to support its contention. *Thompson* denied retroactive effect to O'Callahan v. Parker, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969), which had held that the military courts have no jurisdiction to try a military man charged with a crime cognizable in a civilian court and having no military connection.

The court in *Thompson* relied primarily on the theory that past courts-martial were not inherently unfair or unreliable and therefore the purpose of the rule would not be significantly served by requiring retrials by civilian courts.

The court based its reasoning on DeStefano v. Wood, 392 U.S. 631, 88 S.Ct. 2093, 20 L.Ed.2d 1308 (1968). *DeStefano* denied retroactive effect to Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), and Bloom v. Illinois, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968), [right to jury trial in serious criminal cases], because although those cases recognized that juries may serve to prevent arbitrariness and repression they did not rest on any assumption that nonjury trials are more likely than jury trials to be unfair or unreliable.

*O'Callahan* and *DeStefano* can be viewed as cases resting on a finding of no jurisdiction; to that extent they are somewhat similar to *Gutknecht*. However, unlike those cases the purpose of the rule in *Gutknecht* was to ensure that men would be drafted based on the facts which would properly place them with the legal category of I–A.

The fact that a man burned his draft card or failed to inform the board of his address is not one of criteria established by Congress upon which a man can be drafted. See 50 U.S.C. App. 456(h) (2); 32 C.F.R. §§ 1622.1–1622.50. Consequently, when a person is drafted as a delinquent the fact-finding process necessary to a proper induction order is inherently unfair and unreliable.

The government points out that there are approximately 6,000 men in the army who were drafted as delinquents. In most cases such an argument would only serve to hide the due process principle involved; however, in the field of retroactivity administrative convenience is a legitimate concern.

The court in *Thompson* stated that there had been four million courts-martial since 1917 in the army alone, and that this presented grave administrative problems. This court cannot accept an argument that the possible discharge of 6,000 men in the armed forces is such a compelling national interest so as to override the purposes of *Gutknecht*.

Furthermore, since delinquency induction was not authorized, the petitioner is in the army illegally. In view of this, the factors of law enforcement reliance and administrative convenience are entitled to almost no weight in the balancing process.

■ Viewing the case law of retroactivity the court finds no substantial reason why the decision in *Gutknecht* should not be given retroactive application.

It is hereby ordered that the petition for a writ of habeas corpus be granted, and that petitioner, Robert Andre, being legally restrained of his liberty, be discharged from the custody of the United States Army and custody of respondents.