**UNITED STATES of America**

v.

**Daniel KELLY, Defendant.**

**No. 70–C–567.**

United States District Court,
E. D. New York.

June 26, 1970.

Edward R. Neaher, U. S. Atty., E. D. New York, for the United States; Vincent J. Favorito, Asst. U. S. Atty., of counsel.

Marvin M. Karpatkin, Barry Satlow, Melvin L. Wulf, Alan H. Levine, New York City, for defendant.

ZAVATT, District Judge.

By memorandum-order dated and filed May 27, 1970, I granted the defendant's motion to vacate the sentence and judgment of conviction, hereinafter referred to. At that time, no formal opinion was filed because the court did not want to delay the release of defendant from jail. What follows is the

opinion accompanying that memorandum-order, to be filed, nunc pro tunc, as of May 27, 1970.

Petitioner moves pursuant to 28 U.S.C. § 2255 to vacate the sentence and judgment of conviction, hereinafter referred to. The motion is granted.

On May 3, 1968, the defendant pleaded guilty to a one-count indictment charging him with failing to report for induction into the Armed Forces in violation of 50 U.S.C. App. § 462(a). On June 20, 1968, this court sentenced the defendant to a term of three years which he is presently serving at the Allenwood Federal Prison Camp. The instant motion is predicated upon two recent decisions of the Supreme Court, Gutknecht v. United States, 396 U.S. 295, 90 S.Ct. 506, 24 L.Ed.2d 532 (1970) and Breen v. Selective Service Local Board No. 16, 396 U.S. 460, 90 S.Ct. 661, 24 L.Ed.2d 653 (1970) decided more than one and one-half years after the petitioner pleaded guilty and was sentenced. The court must first decide whether the facts of the instant case are controlled by these two decisions and, if so, whether *Gutknecht* and *Breen* are to be accorded retroactive effect. This latter question is one of first impression in this Circuit. The court is aware of only one opinion on point, *i. e.,* Andre v. Resor, 313 F.Supp. 957 (N.D. Cal., filed May 22, 1970).

On May 8, 1970, this court held a hearing to determine the relevant facts, none of which appears to be in dispute. As a result of that hearing and the papers (including the file of the local draft board relating to the petitioner) the court finds the facts to be as follows:

(1) Petitioner, born September 20, 1947, registered with Local Board No. 61, Jamaica, New York, in October 1965.

(2) He was classified I-A on November 15, 1965 by a 5–0 vote of that Board.

(3) He entered the City College of New York in the fall of 1965 and, on December 13, 1965, was classified II-S by a 5–0 vote of the Board.

(4) On July 18, 1966, he was again classified I-A by a 5–0 vote of the Board. (This reclassification apparently occurred because of the City College summer recess).

(5) On September 14, 1966, he wrote to the Board requesting that he be reclassified as a conscientious objector. The following day the Board mailed him CO Form 150.

(6) On September 27, 1966, he returned the completed Form 150 to the Board. The Board did not pass upon his conscientious objector claim, but reclassified him II-S on October 17, 1966, following the submission of information that petitioner was a full-time student at City College.

(7) The pertinent events giving rise to this motion began on December 11, 1966, when the petitioner returned his Selective Service Form 2 (Registration Certificate) and Selective Service Form 110 (Notice of Classification) to the Local Board, by letter stating his reasons for that action. The letter expressed, *inter alia,* the petitioner's opposition to all wars and, after expressing no opposition to doing "alternate service," stated:

"\* \* \* I will no longer co-operate or be part of the conscription system in this country or any other, because it is a direct means of supporting the war \* \* \*."

(8) In response to this letter, and on December 28, 1966, the Local Board returned these two forms to the petitioner accompanied by a letter advising him of his "obligation to have these forms in your possession at all times." The letter also advised him that upon the termination of his II-S classification, his conscientious objection claim could be appealed.

(9) On February 21, 1967, the petitioner returned these forms to the Board once again, this time accompanied by two letters. The first, dated December 29, 1966, reaffirmed his earlier statement that he would no longer co-operate with the Selective Service System,

"not even to the extent of posessing [sic] selective service certificates or of accepting * * * any * * * classification." The second letter, dated February 19, 1967, discussed, generally, the wonders of Christianity in a world beset by problems.

(10) On March 13, 1967, the petitioner was declared delinquent, by a Board vote of 4–0, for failing to have his Registration Certificate and Notice of Classification in his possession. A notice of the declaration of delinquency was mailed to the petitioner the following day, as required by the regulations. 32 C. F.R. § 1642.4(b).

(11) On April 13, 1967, the petitioner was reclassified I-A and put in Group I priority in the order of call, by a 3–0 vote of the Board. See 32 C.F.R. §§ 1631.7(1), 1642.12, 1642.13. The next day the Board mailed to petitioner a notice of his reclassification.

(12) On April 26, 1967, the petitioner was notified to report for induction on May 10, 1967.

(13) On May 10, 1967, he appeared at the Local Board, handed over his classification and induction notices, and refused transfer to the Examining & Induction Station. The indictment and guilty plea followed.

### Gutknecht and Breen

In *Gutknecht, supra,* petitioner was classified I-A at the time he surrendered his registration certificate and notice of classification by leaving them on the steps of the Federal Building in Minneapolis, while he was stating his opposition to the war in Vietnam. He was declared delinquent pursuant to Selective Service Regulations, 32 C.F.R. § 1642.1 et seq., and his position in the order of call was accelerated pursuant to 32 C.F.R. § 1631.7, by his being placed in the top priority group. Subsequently, he was ordered to report for induction and, when he refused, was indicted for wilfully and knowingly failing and neglecting to perform a duty required of him under the Military Selec-

tive Service Act of 1967. He was tried and convicted. On appeal, the Supreme Court reversed his conviction, holding void the delinquency regulations under which his induction was accelerated.

"The power under the regulations to declare a registrant 'delinquent' has no statutory standard or even guidelines. The power is exercised entirely at the discretion of the local board. It is a broad, roving authority, a type of administrative absolutism not congenial to our lawmaking traditions." 396 U.S. at 306, 90 S.Ct. at 511.

This holding was foreshadowed by my colleague, Judge Dooling, in United States v. Eisdorfer, 299 F.Supp. 975 (E. D.N.Y. 1969), appeal dismissed, 396 U. S. 1066, 90 S.Ct. 810, 25 L.Ed.2d 83 (1970), cited with approval by the Supreme Court in *Gutknecht.*

The Court *did not dispute* the power of the Government to punish registrants, who fail to comply with Selective Service duties as required under the Act, through the criminal law but, rather, found no Congressional authorization for "the Selective Service System to reclassify exempt or deferred registrants for punitive purposes and to provide for accelerated induction of delinquents" who fail to perform their required duties under the Act. 396 U.S. at 302, 90 S.Ct. at 509.

In *Breen, supra,* petitioner was classified II-S (deferred-student) at the time he surrendered his registration card to a minister. He was subsequently declared delinquent for failure to possess his draft card and reclassified I-A. The Court held, *inter alia,* that a statutory deferment, like the statutory exemption in Oestereich v. Selective Service Bd., 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968), could not be taken away because the registrant did not possess his registration card. It also reiterated that "delinquency" induction is unauthorized.

The court cannot distinguish the facts of the instant case from these two cases.

The petitioner herein was classified II-S (the Government does not contend that he was not entitled to that deferment); he was reclassified I-A pursuant to the delinquency regulations for failing to have his registration certificate and notice of classification in his possession; this reclassification resulted in an accelerated notice of induction as he was placed in the highest priority group in the order-of-call; he was convicted for failure to report for that accelerated induction. The court finds that if this case were to arise today, the petitioner would be entitled to relief on two grounds: (1) that the Board lacked the power to deprive petitioner of his II-S deferment because of his failure to have certain registration forms in his possession (*Breen, supra*) and (2) that the Board had no power to deprive him of his previous standing in the order-of-call by the application of the delinquency regulations (*Gutknecht, supra*). However because the judgment of conviction became final before *Gutknecht* and *Breen* were decided, the court is faced squarely with the question of whether these decisions should be accorded retroactive effect.

### Procedural Issues

Before reaching that question, three preliminary, but related, procedural problems are to be considered. In the instant case the petitioner (1) never appealed from the declaration of his delinquency to the administrative apparatus of the Selective Service System, (2) pleaded guilty to the indictment and (3) never appealed from that conviction. The court must decide whether any of these omissions forecloses him from the relief he now seeks.

### Failure to take an administrative appeal

■ This point is not raised by the Government in its brief in opposition. The precise issue was raised in *Gutknecht, supra*, in which the Supreme Court rejected the contention that one who has been declared delinquent must appeal that action through Selective Service administrative channels or be foreclosed from asserting it as a defense to a criminal prosecution. *Gutknecht, supra*, 396 U.S. 299–301, especially n.4 at 301, 90 S.Ct. 506. The Court holds that since administrative exhaustion is not required in order to challenge a classification at a criminal trial, such exhaustion should not be required on a collateral attack upon a conviction in which the validity of the reclassification is challenged.

### The plea of guilty

The Government contends that the plea of guilty, upon advice of counsel, was a waiver of all defenses and defects nonjurisdictional in nature. For a waiver to be valid, it must be "an intentional relinquishment or abandonment of a known right or privilege," Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938); *cf.* United States v. Manfredonia, 391 F.2d 229 (2d Cir. 1968). In McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), the Supreme Court, after citing *Johnson, supra*, stated:

> * * * because a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts. 89 S.Ct. at 1171.

In United States v. Lucia, 416 F.2d 920 (5th Cir. 1969) the Fifth Circuit considered the effect of a guilty plea to an indictment charging a violation of the federal wagering tax laws. The plea predated the Supreme Court's decisions in Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968) and Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1967) which held that the defendant's assertion of the privilege against self-incrimination was a complete bar to a prosecution under the statutes to which he had pleaded. The Fifth Circuit rejected the district court's finding that the plea

waived all defenses, citing *Johnson, supra,* and stated:

> "The courts will not accept an accused's loss of a constitutional right when he does not understand what he is losing." 416 F.2d at 922.

and that:

> "The Supreme Court has repeatedly held that a party cannot be said to waive a right that was judicially created *after* the supposed waiver." 416 F.2d at 922.

As to the Government's argument that a guilty plea "waives all defenses * * * which are not jurisdictional," the court stated:

> "That statement is true only when the defendant is able to assess the various defenses available to him, as well as the consequences of submitting to conviction. Otherwise, the requirements integral to accepting guilty pleas make no sense. * * * The plea represents the relinquishment of a bundle of defenses, and has no magical implications with regard to finality beyond that. * * * If one of the component waivers was ineffective because of the inadequate knowledge upon which it was made, the defect is not cured by virtue * * * of a guilty plea." 416 F.2d at 923.

See also United States v. Miller, 406 F.2d 1100 (4th Cir. 1969)—permitting withdrawal of a guilty plea from which no appeal had been taken after the Supreme Court had decided Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968), holding that defendants may plead self-incrimination as a defense to a prosecution under a section of the National Firearms Act, 26 U.S.C. §§ 5801 et seq.

■ The instant case is even stronger than *Lucia* and *Miller, supra,* in that it is not concerned with a possible defense to a prosecution but, rather, with the invalidity of the entire proceeding. The court will not hold that a guilty plea waives all defects, when the defect is the prosecution itself.

■ As regards the defendant's "knowledge" of this defect, we must examine the state of the law when the plea was taken in 1968. While it is true that *Breen, supra,* and *Gutknecht, supra,* did not overrule any prior decisions, it is also true that the delinquency regulations had been in effect for twenty years. In addition, neither *Oestereich, supra, Gutknecht, supra,* nor *Breen, supra,* had been decided. In light of this state of the law on May 3, 1968 (the date when the petitioner pleaded guilty), the court cannot say that the defendant knowingly waived his right to contest his conviction when the Supreme Court subsequently ruled that the Board had no power to deny him his deferment and accelerate his induction. The court holds that the plea of guilty does not bar defendant from challenging his conviction in light of these recent decisions.

### *Failure to appeal his conviction*

■ This point, again not raised by the Government, arises in the limited context of whether one who has not appealed from a conviction may subsequently attack that conviction by a § 2255 motion. The Second Circuit in United States v. Sobell, 314 F.2d 314, cert. denied, 374 U.S. 857, 83 S.Ct. 1906, 10 L.Ed.2d 1077 (1963), indicated that while, in the usual case a defendant would be foreclosed from attacking his conviction on a § 2255 motion if he has not appealed therefrom, there are two exceptions to this rule. The defendant must show either,

> "(1) a significant denial of a constitutional right, even though he could have raised the point on appeal and there was no sufficient reason for not doing so * * * or
>
> (2) a defect seriously affecting his trial, even though not of constitutional magnitude, if it was not correctible on appeal or there were 'exceptional circumstances' excusing the failure to appeal. * * *" 314 F.2d at 323.

The court finds that it would be a gross miscarriage of justice to foreclose this defendant from now challenging his con-

viction, when, in the intervening period, the statutes upon which his conviction is based have been declared void. In this regard, *cf.* Larson v. United States, 275 F.2d 673 (5th Cir.), cert. denied, 363 U.S. 849, 80 S.Ct. 1627, 4 L.Ed.2d 1732 (1960), and Cupit v. United States, 292 F.Supp. 146 (W.D. Wisc. 1968), in which a defendant did not appeal from a conviction for failing to report for induction into the armed forces. The district court held that the order directing his induction was improperly rendered (because it was signed by the Clerk of the Board), and vacated the judgment of conviction. It entertained the § 2255 motion in spite of defendant's failure to appeal, citing an "exceptional circumstances" exception to the general rule.[1] The Seventh Circuit reversed on the merits, Hestad v. United States, 418 F.2d 1063 (1969), but upheld the district court's decision to entertain the § 2255 motion in the absence of an appeal. *Cf.* Deckard v. United States, 381 F.2d 77 (8th Cir. 1967).

Having decided that the defendant is not foreclosed from collaterally challenging his conviction, the court now turns to the central issue, the retroactivity of *Breen* and *Gutknecht.*

### *Retroactivity*

Prior to 1965, Supreme Court decisions regarding retroactivity were unclear. For example, there is dictum in Ex Parte Siebold, 100 U.S. 371, 376–377, 25 L.Ed. 717 (1880), to the effect that, if a statute is declared void, a prior conviction and imprisonment under it are also void. On the other hand, in Chicot County Drainage Dist. v. Baxter State Bank, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940), the Supreme Court reversed a Circuit Court opinion which declared void a prior judgment rendered under a statute later declared to be un-

constitutional by the Supreme Court, stating:

> "The actual existence of a statute, prior to such a determination, is an operative fact and may have consequences which cannot justly be ignored. The past cannot always be erased by a new judicial declaration." 60 S.Ct. at 319.

See also Cipriano v. City of Houma, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969). *But see* Norton v. County of Shelby, 118 U.S. 425, 442, 6 S.Ct. 1121, 30 L.Ed. 178 (1886). It is possible to distinguish *Siebold* and *Chicot* on the ground that *Chicot* dealt with a municipal bond reorganization plan, while *Siebold's* dictum related to criminal convictions. The court has found no direct holding by the Supreme Court that the subsequent finding that a substantive criminal statute is unconstitutional voids all prior convictions thereunder, although the sparse case law on the point at lower judicial levels would appear to support that proposition. People v. Tannenbaum, 23 N.Y.2d 753, 296 N.Y.S.2d 798, 244 N.E.2d 269 (1968); *cf.* Deckard v. United States, *supra*; Warring v. Colpoys, 74 App.D.C. 303, 122 F.2d 642, 646, cert. denied, 314 U.S. 678, 62 S.Ct. 184, 86 L.Ed. 543 (1941); *cf.* Horton v. United States, 300 F.Supp. 1332 (D. Conn. 1969).

If it were true, that a subsequent ruling of unconstitutionality of a statute voided all past convictions thereunder, the question of retroactivity would not be in issue at all in the instant case. *See Andre, supra.* Rather than relying on this apparently unsettled proposition, the court will analyze the issue as if retroactivity is in issue and will treat the Supreme Court's voiding of the delinquency regulations as one of the factors to be considered in determining whether *Gutknecht* and *Breen* should be applied retroactively.

1. Subsequent to the petitioner's conviction but before sentence, the Ninth Circuit decided Brede v. United States, 396 F.2d 155, modified on petition for rehearing, 400 F.2d 599 (1968). Those decisions changed the interpretation of the regulation at issue in *Cupit*. The defendants, however, did not appeal and, after sentencing, brought the § 2255 motion.

As a necessary concomitant to the so-called revolution in criminal procedure which occurred in the 1960s, characterized in part by the overruling of many prior decisions as well as the enunciation of "new" rights and procedures, the Supreme Court was called upon, on many occasions, to determine which of its new decisions were to be applied retroactively.

Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), was the first major case in the 1960s to consider the question of retroactivity. At issue was the retroactivity vel non of Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), which held that the "exclusionary rule" applied to the states, in cases in which evidence had been obtained in violation of the Fourth Amendment. The Court, after reviewing its prior decisions on retroactivity, stated that:

> " * * * [t]he effect of the subsequent ruling of invalidity on prior final judgments when collaterally attacked is subject to no set 'principle of absolute retroactive validity' but depends upon a consideration of 'particular relations * * * and particular conduct * * * of rights claimed to have become vested, of status, of prior determinations deemed to have finality'. * * * *" 85 S.Ct. at 1736.

and concluded "that the Constitution neither prohibits nor requires retrospective effect. * * * *" 85 S.Ct. at 1737.

■ The Court then set forth what have become the tripartite standards governing the retroactivity vel non of its decisions. The factors to be considered are:

(1) the purpose to be served by the new rule;

(2) the reliance by the courts and the police on the old rules;

(3) the effect of retroactivity on the administration of justice.

85 S.Ct. 1741.

In spite of these seemingly clear standards, subsequent decisions of the Supreme Court have confused rather than clarified their precise meaning. The resultant case law caused Mr. Justice Harlan to observe in his dissenting opinion in Desist v. United States, 394 U.S. 244 at 256–258, 89 S.Ct. 1030, 1038, 22 L.Ed.2d 248, 259:

> "In the four short years since we embraced the notion that our constitutional decisions in criminal cases need not be retroactively applied * * * we have created an extraordinary collection of rules to govern the application of that principle. * * * I have in the past joined in some of these opinions which have, in so short a time, generated so many incompatible rules and inconsistent principles."

Nevertheless, this court will attempt to analyze Supreme Court retroactivity decisions, in an effort to render a meaningful decision in the instant case.

### Retroactivity applied

The Supreme Court has said that the purpose of the new rule is the most important of the three factors, *Desist, supra,* 89 S.Ct. 1033. It has also stated that, where the purpose of the rule does not clearly merit retroactivity in a given case, the other factors (reliance and effect on the administration of justice) will be looked to. In cases in which the Court has applied an earlier decision retroactively, it has been concerned with the reliability of the conviction; "the fairness of the trial, the very integrity of the fact-finding process." *Linkletter, supra,* 85 S.Ct. 1743. In cases, in which the guilt of a defendant, ascertained under a prior procedure, may not have been reliably determined, the new rule has been applied retroactively—or, as stated by Judge Zirpoli, in *Andre, supra,*

> "The more directly the rule in question serves to preclude the conviction of innocent persons, the more likely it is that the rule will be afforded retrospective application."

Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), [right to counsel in state felony cases] was ap-

plied retroactively in that case. *See also* Doughty v. Maxwell, 376 U.S. 202, 84 S. Ct. 702, 11 L.Ed.2d 650 (1964); *Linkletter, supra,* 85 S.Ct. 1737 n.13; Griffin v. People of State of Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956), [right to trial transcript for indigents for use on appeal in state criminal cases] was applied retroactively by the Supreme Court in Eskridge v. Washington State Board of Prison Terms and Paroles, 357 U.S. 214, 78 S.Ct. 1061, 2 L.Ed.2d 1269 (1958); Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), [invalidating procedure to determine the voluntariness of a confession] was applied retroactively by the Supreme Court in that case. *See also* McNerlin v. Denno, 378 U.S. 575, 84 S.Ct. 1933, 12 L. Ed.2d 1041 (1964); *Linkletter, supra,* 85 S.Ct. 1743 n.20; Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), [invalidating the conviction of one defendant based on a confession of a codefendant] was applied retroactively by the Supreme Court in Roberts v. Russell, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968); Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967), [right to counsel at sentencing] was applied retroactively by the Supreme Court in McConnell v. Rhay, 393 U.S. 2, 89 S.Ct. 32, 21 L.Ed.2d 2 (1968); Hamilton v. Alabama, 368 U. S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961), [right to counsel at certain arraignments] has been applied retroactively, *see McConnell, supra,* 89 S.Ct. at 33; White v. Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963), [right to counsel at a preliminary hearing] has been applied retroactively by the Supreme Court in Arsenault v. Commonwealth of Massachusetts, 393 U.S. 5, 89 S.Ct. 35, 21 L.Ed.2d 5 (1968); Barber v. Page, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968), [right to confront a witness in a state prosecution, unless the state has been unable to produce the witness after a good faith effort to locate him] was applied retroactively by the Supreme Court in Berger v. California, 393 U.S. 314, 89 S.Ct. 540, 21 L.Ed.2d 508 (1969); Douglas v. People of State of California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), [right to counsel on appeal from a state court criminal conviction] has been applied retroactively, *see Arsenault, supra,* 89 S.Ct. at 36; Stovall v. Denno, 388 U. S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); Witherspoon v. State of Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L. Ed.2d 776 (1968), [death sentence cannot be carried out if jury that imposed it was selected by excluding those who did not believe in the death sentence] declared retroactive in that case, see 88 S.Ct. 1777–1778, n.22.

Generally speaking, these cases are characterized by a flaw in the prior procedure (subsequently invalidated) of such magnitude that the facts upon which the prior convictions were based could not be said to be reliable; the guilt or innocence of the accused was in serious doubt as a result of the invalidated procedure. For example, many of the cases relate to the right to counsel at various stages of the litigation. Retroactivity was applied on the theory that, without counsel to assist in the preparation and presentation of a case, a layman cannot have a fair trial and his guilt may not have been fairly or accurately ascertained. It is important to note that the Supreme Court cases in which retroactivity was applied looked only to the purpose of the rule, and rejected or ignored arguments that (1) the states had relied on prior decisions upholding the procedure in question or (2) held that a particular constitutional amendment was not binding on the states through the Fourteenth Amendment. *See, e.g., Berger, supra; Roberts, supra.* In cases in which retroactivity was applied, the effect on the administration of justice, the third factor, has also been ignored or rejected. It can be said that, in those cases in which the purpose of the new rule was to correct a flaw in prior procedure seriously affecting the determination of guilt of the accused, the court has applied its decision retroactively without considering

either the reliance or burden factors. *Andre, supra.*

### Retroactivity denied

It is when an attempt is made to reconcile the Supreme Court's nonretroactive opinions with those applying retroactivity that confusion results. In cases in which the purpose of the rule does not affect the guilt or innocence of the accused or is unrelated to the reliability of the fact-finding procedure, *e.g.*, cases in which evidence was obtained by illegal searches, *Linkletter, supra;* Fuller v. Alaska, 393 U.S. 80, 89 S.Ct. 61, 21 L.Ed.2d 212 (1968), holding nonretroactive Lee v. State of Florida, 392 U.S. 378, 88 S.Ct. 2096, 20 L.Ed.2d 1166 (1968) [exclusion of evidence in state trials taken in violation of 47 U.S.C. § 605]; Desist v. United States, *supra,* holding nonretroactive Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) [exclusion of electronic eavesdropping evidence seized without a warrant], the court has concentrated on the factors of reliance and burden and found them controlling. Since *Linkletter, supra; Fuller, supra* and *Desist, supra,* all concern the retroactivity of cases that overruled prior cases, state reliance on those prior cases was substantial. In addition, the burden on the states to retry old cases would be great —considering the number of retrials which would be necessitated and the difficulty in reconstructing events that took place long ago. See *e.g., Linkletter, supra.*

The search and seizure cases, hereinabove cited, in which the purpose of the new rule does not affect the determination of guilt or innocence of the accused, present no analytical problem. However, in a series of cases in which it cannot be said with certainty that guilt or innocence was unaffected by the prior procedures, Tehan v. United States ex rel. Shott, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966) holding Griffin v. State of California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965) nonretroactive [adverse comment by judge or

prosecutor on the defendant's failure to take the stand]; Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966), holding Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) and Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) nonretroactive [right to counsel and certain warnings during custodial interrogation]; Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967) holding United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) and Gilbert v. State of California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), nonretroactive [identification evidence taken in absence of counsel]; DeStefano v. Woods, 392 U.S. 631, 88 S.Ct. 2093, 20 L.Ed.2d 1308 (1968) holding Duncan v. State of Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968) and Bloom v. State of Illinois, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968) nonretroactive [right to jury trial in serious criminal cases]; and Halliday v. United States, 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 164 (1969) holding McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1967) nonretroactive [guilty pleas taken in violation of Rule 11 of the Federal Rules of Criminal Procedure], the court has considered several factors in concluding that a decision should not be retroactively applied. These decisions are difficult to reconcile with prior decisions of the Supreme Court to the effect that, if the determination of guilt under the former procedure was unreliable, the decision should be applied retroactively.

Starting with *Johnson, supra,* the Court appended a factor onto the "purpose" test by stating that "fact-finding * * * is necessarily a matter of degree," 86 S.Ct. at 1778, and that, in cases in which the purpose of the rule does not clearly point to retrospective application, the factors of reliance and effect on the administration of justice must be weighed against the "probabilities" that the fact-finding process may have been

flawed. *Stovall, supra,* 87 S.Ct. at 1970. Starting with this proposition, the Court has, apparently, although not always expressly, looked for the presence of "other safeguards" to see whether the determination of guilt, although arguably affected by the prior procedure, was nonetheless fairly reliable. For example, adverse comment by a prosecutor is offset to some degree by the presence of the testimonial privilege against self-incrimination, *Tehan, supra*; United States v. Miller, *supra,* 406 F.2d at 1104; confessions taken under circumstances that did not comport with the standards promulgated in *Escobedo* and *Miranda* (held not retroactive) could still be attacked on due process grounds (another safeguard) *Johnson, supra*; identifications taken in violation of *Wade* and *Gilbert* standards (held nonretroactive) could still be attacked on due process grounds (another safeguard) *Stovall, supra;* defendants convicted in nonjury cases were, nevertheless, tried by a judge prior to *Duncan, supra,* and *Bloom, supra, DeStefano, supra;* pleas taken in violation of Rule 11 of the Federal Rules of Criminal Procedure could still be attacked as involuntary on due process grounds (another safeguard), *Halliday, supra.*

If "other safeguards" were present, the Court has considered the reliance and effect factors in concluding that a decision should not be applied retroactively.

In considering the reliance factor the Court has taken into account the fact that only a rule of procedure was involved; that state-federal relations were affected; that a prior decision was overruled or a new right incorporated through the Fourteenth Amendment.

In such decisions, the Court has also considered the burden on the administration of justice. In so doing, it has taken into account the prospects of success on retrial; the difficulty in reconstructing past events; whether the new rule would benefit defendants whose guilt was reliably determined in spite of a flaw or deficiency in the prior rule.

### The retroactivity of Breen and Gutknecht

The purpose of the decisions in *Breen, supra,* and *Gutknecht, supra,* read together, was to invalidate local board action punishing registrants, pursuant to the delinquency regulations. The Court held that local boards have no Congressional authorization for such action. The stated purpose is not one which affects a particular procedure in the process of delinquency classification, [*see,* Bucher v. Selective Service Sys., Local Boards Nos. 2, etc., 421 F.2d 24 (3d Cir. 1970), for a discussion of the procedural-constitutional deficiencies in the delinquency reclassification procedure— an issue not reached by the Supreme Court in either of these two decisions] but, rather, one which invalidates the delinquency procedure in its entirety. Since a local board has no power to punish a registrant by depriving him of his exempt or deferred classification and/or by accelerating his induction, it follows, a fortiori, that a failure or refusal to obey a local board's induction order, under such circumstances, cannot constitute the basis of a criminal indictment and subsequent conviction thereunder.

The purpose of the *Breen* and *Gutknecht* decisions, viewed broadly, is immaterial to the reliability of the fact-finding procedures leading to a conviction. The concern is not with the facts upon which a conviction is based but, rather, the principle that the trial should never have taken place. This principle goes beyond and is paramount to any question of fairness of a trial and the presence of "other safeguards." It is difficult to conceive of any valid reason why *Breen* and *Gutknecht* should not be applied retroactively. *Andre, supra. See also* Bradley v. Laird, 315 F.Supp. 544 (D.Kan., decided Apr. 6, 1970)

The court grants the defendant's motion on the ground that *Breen* and *Gutknecht* are to be applied retroactively on the basis of the purpose of those decisions. Although the factors of reliance and burden are not controlling in

**510**

this case, the court makes the following observations with reference thereto:

(1) no state-federal relationship is involved;

(2) no prior procedural rule is involved;

(3) no prior decision was overruled in *Breen* and *Gutknecht;*

(4) the Government will not be burdened with retrials;

(5) there is no danger that reliable convictions will be upset.

The defendant's motion to vacate the sentence and judgment of conviction of June 20, 1968 is granted.