**Gordon Jay THOMPSON, Petitioner,**

v.

**Jacob J. PARKER, Warden, United States Penitentiary, Lewisburg, Pennsylvania, Respondent.**

**No. 1102.**

United States District Court
M. D. Pennsylvania.

Jan. 27, 1970.

Peter Krehel, Sunbury, Pa., for petitioner.

S. John Cottone, U. S. Atty., Scranton, Pa., Harry A. Nagle, Asst. U. S. Atty., Lewisburg, Pa., Arnold I. Melnick, Lieutenant Colonel, JAGC, Michael A. Katz, Captain, JAGC, Dept. of the Army, Washington, D. C., for respondent.

## OPINION

FOLLMER, District Judge.

Gordon Jay Thompson, an inmate at the United States Penitentiary, Lewisburg, Pennsylvania, has filed this petition for a writ of habeas corpus. On August 25, 1969, this court issued a Rule to Show Cause upon the respondent, Jacob J. Parker, Warden, United States Penitentiary, Lewisburg, Pennsylvania. An answer has been filed in response to the Rule as well as a memorandum of points and authorities in support of the answer. Petitioner has since filed a traverse to the answer. The Department of the Army has furnished this court with a complete record in the general court-mar-

tial case of Private (E-2) Gordon J. Thompson, RA 11 347 712.

The material facts are as follows: the petitioner, Gordon Jay Thompson, while serving as a soldier, grade of private, in the United States Army, was arrested around March 4, 1959, at Fort Sill, Oklahoma, during an investigation of an offense of murder allegedly committed on February 21, 1959, at Fort Monmouth, New Jersey. Thompson was subsequently charged with premeditated murder in violation of Article 118, Uniform Code of Military Justice (10 U.S.C. § 918); with larceny in violation of Article 121, Uniform Code of Military Justice (10 U.S.C. § 921); and with reckless driving in violation of Article 111, Uniform Code of Military Justice (10 U.S.C. § 911). He was tried and convicted by a general court-martial of the three charges on July 28, 1959, and was sentenced to be confined at hard labor for the term of his natural life.[1] Relator through his counsel unsuccessfully appealed the judgment of conviction to all the military appellate courts including the United States Court of Military Appeals.

In 1962, petitioner filed in this court a petition for a writ of habeas corpus. As grounds for relief, he alleged that the military court-martial lacked the jurisdiction to try him for a capital offense committed within the United States during a time of peace. This court ruled adversely to the petitioner and dismissed the petition. Thompson v. Willingham, 217 F.Supp. 901 (M.D.Pa.1962). The United States Court of Appeals for the Third Circuit affirmed this decision. 318 F.2d 657 (3d Cir. 1963).

On November 16, 1966, relator filed a second petition for a writ of habeas corpus. He again raised the jurisdictional issue. Additionally he alleged that (1) he was denied due process of law by unfavorable news publicity; (2) that there was an unreasonable delay in informing

---

1. By Orders of the Secretary of the Army, announced on April 2, 1964, June 9, 1964, and April 24, 1969, the petitioner's term of confinement was reduced first to 40 years, then to 37 years, and then to 28 years. His full term of confinement will expire on July 27, 1987. His current minimum release date is May 15, 1978.

him of the charges against him; (3) that he was convicted by a two-thirds (⅔) vote rather than by unanimity; (4) that he did not have a jury trial; and (5) that statements made by him and admitted in evidence were obtained in violation of his privilege against self-incrimination under the Fifth Amendment. This court by an Order dated February 1, 1967, summarily dismissed all but the final allegation concerning the use of the statements. An evidentiary hearing was held on this issue. This court determined that the military had given fair consideration to the question, and in reliance on Burns v. Wilson, 346 U.S. 137, 73 S.Ct. 1045, 97 L.Ed. 1508 (1953),[2] dismissed the petition. Again, the United States Court of Appeals for the Third Circuit affirmed this disposition. United States ex rel. Thompson v. Parker, 399 F.2d 774 (3d Cir. 1968). The United States Supreme Court denied certiorari. 393 U.S. 1059, 89 S.Ct. 701, 21 L.Ed.2d 701 (1969).

The instant petition for a writ of habeas corpus raises four issues all of which have been adjudicated in the prior habeas corpus proceedings in this court. Petitioner alleges that (1) statements introduced at his court-martial were obtained in violation of his privilege against self-incrimination; (2) that he was held incommunicado for forty (40) days without charges and for over one hundred (100) days was not apprised of the charges against him; (3) that as a result of adverse news coverage, he was denied a fair and impartial hearing; and (4) that the court-martial court lacked jurisdiction to try him.

Title 28, U.S.C. § 2244(a) provides that:

No circuit or district judge shall be required to entertain an application for a writ of habeas corpus to inquire into the detention of a person pursuant to a judgment of a court of the United States if it appears that the legality of such detention has been determined by a judge or court of the United States on a prior application for a writ of habeas corpus and the petition presents no new ground not theretofore presented and determined, and the judge of court is satisfied that the ends of justice will not be served by such inquiry.

■ The application of this statute was discussed at some length by the Supreme Court in Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963). The Court emphasized the principle that the disposition of petitions raising issues previously adjudicated requires the exercise of sound judicial discretion. The Court held that "Controlling weight may be given to denial of a prior application for federal habeas corpus or § 2255 relief only if (1) the same ground presented in the subsequent application was determined adversely to the applicant on the prior application, (2) the prior determination was on the merits, and (3) the ends of justice would not be served by reaching the merits of the subsequent application." Id., at 15, 83 S.Ct. at 1077.

■ Application of the foregoing principles lead me to the conclusion that the "ends of justice" would not be served in reaching the merits of the issues raised in the instant petition with the exception of the fourth issue relating to the jurisdiction of the court-martial court. Petitioner's claim that he was confined without charges and that there was undue publicity prejudicing his right to a fair trial were never presented to the appellate courts of the military, but were raised for the first time in petitioner's second habeas corpus petition filed in this court in 1966. We held then that the failure on the part of relator to raise these issues for review before the military courts foreclosed his raising these

---

2. In *Burns*, supra, the United States Supreme Court held that when a military decision has dealt fully and fairly with an allegation raised in an application for habeas corpus, it is not open to a federal court to grant the writ simply to re-evaluate the evidence. 346 U.S. 137, 142, 73 S.Ct. 1045 (1953).

issues in a federal court.[3] Nothing in the nature of "new grounds" is alleged in the instant petition to cause us to re-litigate these issues. No new facts or intervening changes in the law have been pleaded. Petitioner does now have the benefit of private counsel, but we do not believe this fact alone warrants further review.[4]

Accordingly both issues will be dismissed.

■ Petitioner urges us to reconsider our ruling with respect to his contention that coerced statements were introduced in evidence against him in light of the recent case of Kauffman v. Secretary of the Air Force, 415 F.2d 991 (D.C. Cir. 1969). That case in applying Burns v. Wilson, supra, held that "the test of fairness requires that military rulings on constitutional issues conform to Supreme Court standards * * *." Id., at 997. The application and interpretation of the *Burns* "fully and fairly" test has caused a split of opinion among the lower federal courts. The test has been increasingly under attack as being inadequate and incapable of application. Cf. Civilian Court Review of Court Martial Adjudications, 69 Col.L.Rev. 1269 (1969). *Kauffman* is another interpretation of this rule. Our Court of Appeals has interpreted the test more narrowly. In ruling on petitioner's last appeal, the court stated that "Under the principle announced in *Burns*, therefore, the district court, after determining that the military courts had given due consideration to petitioner's contentions, quite correctly refused to review and re-evaluate the facts surrounding petitioner's allegations." United States ex rel. Thompson v. Parker, 399 F.2d 774, 776 (3d Cir. 1968).

With all deference to the United States Court of Appeals for the District of Columbia, it is my opinion that the *Burns* test was correctly applied to the circumstances of this case and that nothing could be gained by a further review. Accordingly this issue will be· dismissed.

Finally, it is my opinion that petitioner's jurisdictional claim which has twice been rejected by this court, must be reviewed in light of O'Callahan v. Parker, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969). The majority of the Court in *O'Callahan* held that a member of the Armed Forces who is charged with the commission of a crime cognizable in a civilian court and having no military significance or connection is entitled to his constitutional rights of indictment by a grand jury and trial by a petit jury in a civilian court, and that a court-martial proceeding has no jurisdiction over such crimes.

Respondent in his answer argues that *O'Callahan* should not be applied retroactively. Alternatively, it is urged that even if this court should determine that *O'Callahan* must be applied retroactively, the facts of the case do not warrant its application.

■ The criteria guiding resolution of the issue of whether a new constitutional rule should be applied retroactively were enunciated in Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). They are: "(a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards." Id., at 297, 87 S.Ct. at 1970.

■ Turning to the application of these guidelines, I am of the opinion that

---

3. We based this ruling on our interpretation of Burns v. Wilson, supra. The Court there stated that "It is the limited function of the civil courts to determine whether the military have given fair consideration to each of these claims." Id., 346 U.S. at 144, 73 S.Ct. at 1050. Obviously it cannot be said that there has been a refusal to fairly consider claims that were never asserted.

Suttles v. Davis, 215 F.2d 760 (10th Cir. 1954). See also, Palomera v. Taylor, 344 F.2d 937 (10th Cir. 1965); Burns v. Harris, 340 F.2d 383 (8th Cir. 1965), cert. denied 382 U.S. 960, 86 S.Ct. 439, 15 L.Ed.2d 363 (1965).

4. The quality of the pleadings filed by petitioner leads me to suspect that relator is represented by counsel in name only.

all three factors favor the prospective application of the rule stated in O'Callahan v. Parker.

DeStefano v. Wood, 392 U.S. 631, 88 S.Ct. 2093, 20 L.Ed.2d 1308 (1968), is helpful in resolving the question of whether "the purpose to be served by the new standard" dictates retroactive application. In *DeStefano*, the Court was faced with the question of whether Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), should be given retroactive application. *Duncan* had held that the States cannot deny a request for jury trial in serious criminal cases. In holding that *Duncan* be prospectively applied the Court made the following observation, "As we stated in *Duncan*, 'We would not assert, however, that every criminal trial—or any particular trial—held before a judge alone is unfair or that a defendant may never be as fairly treated by a judge as he would be by a jury.' (Citation omitted.) The values implemented by the right to jury trial would not measurably be served by requiring retrial of all persons convicted in the past by procedures not consistent with the Sixth Amendment right to jury trial." Id., 392 U.S. at 633, 634, 88 S.Ct. at 2095.

Similarly, the holding in *O'Callahan* is not a wholesale condemnation of courts-martial procedure. Futhermore, I do not read *O'Callahan* as intimating that all past courts-martial were unfair. Accordingly, the purpose of the rule would not significantly be served by requiring a retrial of all persons fitting the necessary requirements of the rule.

There seems to be little question but that the military had justifiably relied on the old standard. Mr. Justice Harlan in his dissent to the majority ruling in *O'Callahan*, made this observation:

> * * * In Kinsella v. [United States ex rel.] Singleton, 361 U.S. 234, 80 S.Ct. 297, 4 L.Ed.2d 268 (1960), again looking to the constitutional language, the Court noted that 'military jurisdiction has always been based on the "status" of the accused, rather than on the nature of the offense,' id., at 243, 80 S.Ct. at 302; that is, whether the accused 'is a person who can be regarded as falling within the term "land and naval Forces."' Id., at 240–241, 80 S.Ct. at 301.

> In these cases and many others, Ex parte Milligan, 4 Wall. 2, 123, 18 L.Ed. 281 (1866); Coleman v. Tennessee, 97 U.S. 509, 24 L.Ed. 1118 (1879); Smith v. Whitney, 116 U.S. 167, 184–185, 6 S.Ct. 570, 29 L.Ed. 601 (1886); Johnson v. Sayre, 158 U.S. 109, 114, 15 S.Ct. 773, 39 L.Ed. 914 (1895); Grafton v. United States, 206 U.S. 333, 348, 27 S.Ct. 749, 51 L.Ed. 1084 (1907), this Court has consistently asserted that military 'status' is a necessary *and sufficient* condition for the exercise of court-martial jurisdiction. The Court has never previously questioned what the language of Clause 14 would seem to make plain—that, given the requisite military status, it is for Congress and not the Judiciary to determine the appropriate subject-matter jurisdiction of courts-martial. (Citation omitted.) 395 U.S. 258, 275, 276, 89 S.Ct. 1683, 1692.

Finally, the effect on the administration of justice would be substantial if *O'Callahan* was applied retroactively. The Department of the Army has informed me that since 1917 there have been four million courts-martial in the Army alone. The number of convictions affected by retroactive application would run far into the thousands. It requires little imagination to envision the awesome burden that would be placed on the courts, both federal and military, if this decision was given retroactive application.

For the reasons given therefore, it is the opinion of this court that O'Callahan v. Parker, supra, does not apply retroactively.

Although it is unnecessary in light of the above, I might note that even if *O'Callahan* were applied retroactively, petitioner's case would be unaffected. The crimes of murder and larceny both took place in and adjacent to a barracks premises located at Fort Monmouth, New Jersey, a military reservation under the exclusive jurisdiction of the United

States Army. The victim of both of these offenses was a military person. The majority opinion in *O'Callahan* cited various instances in which some special military interest would serve as an adequate basis for court-martial jurisdiction. At Footnote 14 it is stated:

In its brief the Government lists a large number of courts-martial in the very early days of the Nation which it claims indicate that military trial for civil offenses was common in that period. The facts of the cases, as reflected in the brief summaries which are available to us, suggest no such conclusion. In almost every case summarized, it appears that some special military interest existed. *Many are peculiarly military crimes—desertions, assaults on and thefts from other soldiers, stealing government property.* * * * (Emphasis supplied.)

Petitioner would be unable therefore to secure relief even if *O'Callahan* were given retroactive application since it appears clearly that the crimes for which he was convicted were sufficiently service related to give the court-martial court jurisdiction over the subject matter.

The petition of Gordon Jay Thompson for a writ of habeas corpus will be dismissed.