**Robert JAMES, Appellant,**

v.

**Roger B. COPINGER, Warden, Maryland Penitentiary, Appellee.**

**Matthew Mack CALLAHAN, Appellant,**

v.

**C. C. PEYTON, Superintendent of the Virginia State Penitentiary, Appellee.**

**Nos. 12474, 13024.**

United States Court of Appeals, Fourth Circuit.

April 20, 1971.

Irvin B. Nathan, Washington, D. C. (court-assigned counsel), for appellants.

Francis B. Burch, Atty. Gen., of Md., and Alfred J. O'Ferrall, III, Asst. Atty. Gen., for appellee in No. 12474.

Andrew P. Miller, Atty. Gen., of Va. and Reno S. Harp, III, Deputy Atty. Gen., for appellee in No. 13024.

Before HAYNSWORTH, Chief Judge, and BRYAN and CRAVEN, Circuit Judges, on resubmission.

CRAVEN, Circuit Judge:

Robert James and Matthew Mack Callahan have petitioned for rehearing after our abstention in favor of state court determination of the retroactivity of North Carolina v. Pearce, 395 U.S. 711, 89 S. Ct. 2072, 23 L.Ed.2d 656 (1969). See, James v. Copinger, 428 F.2d 235 (4 Cir., 1970). Petitioner James urges that the law in Maryland is already settled against applying *Pearce* retroactively. Pratt v. Warden, 8 Md.App. 274, 259 A. 2d 580 (1969). Petitioner Callahan urges that the courts of Virginia have indicated a similar disposition, see, Evans v. Richmond, 210 Va. 403, 407, 171 S.E.2d 250 (1969), and that to again pursue his remedy through the state courts would be in vain. We are persuaded that our strong inclination to abstain in deference to the states, expressed in our prior opinion, can no longer be justified, and

we now should decide the question of retroactivity of *Pearce.*

## I.

Robert James was convicted in the Criminal Court of Baltimore of first degree murder on March 31, 1939, and sentenced to life imprisonment. In May of 1957 petitioner Callahan was convicted in Virginia under a charge of rape and also given a life sentence. Neither appealed his conviction. Each claims that he elected not to appeal because of the fear of being given a more severe sentence if he were convicted a second time after a successful appeal and retrial.

The established practice of allowing more severe penalties to be imposed on defendants upon their retrial was discontinued in this circuit after our decision in Patton v. North Carolina, 381 F.2d 636 (4th Cir. 1967). The rule in *Patton* was strict—it imposed an absolute bar on increasing a penalty upon retrial. The Supreme Court's recent decision in North Carolina v. Pearce, *supra,* has provided a more flexible standard for sentencing upon retrial. There the Court found that there was no constitutional infirmity in imposing a greater sentence on a second trial for the same offense, but recognized that due process would not allow the abuse of the procedure to discourage one from appealing his first conviction.

> Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retalliatory motivation on the part of the sentencing judge.

395 U.S. 725, 89 S.Ct. 2080.

The resulting rule of *Pearce* is that for a greater sentence to be imposed the state must affirmatively show facts occurring subsequent to the first trial that justify harsher punishment. 395 U.S. at 726, 89 S.Ct. 2072.

Several courts have applied the *Pearce* rule retroactively to those who have received greater sentences after they successfully attacked their first conviction.[1] See, Barnes v. United States, 136 U.S. App.D.C. 171, 419 F.2d 753 (1969); United States v. Gross, 416 F.2d 1205 (8th Cir. 1969); United States v. King, 415 F.2d 737 (6th Cir. 1969); United States v. Wood, 413 F.2d 437 (5th Cir. 1969); Pinkard v. Neil, 311 F.Supp. 711 (M.D.Tenn.1970); Torrance v. Henry, 304 F.Supp. 725 (E.D.N.C.1969). We are in accord. But it is not that aspect of the question that is before us. We are asked to apply *Pearce* retroactively not to petitioners who have received a greater sentence following a successful appeal, but to those who claim they declined appeal because of the precise deterrent *Pearce* sought to eliminate, *i. e.,* fear of receiving a greater sentence upon retrial. We hold in this context that *Pearce* will not be given retroactive effect in this circuit, and that the petitioners here are not entitled to relief.

## II.

The determination of retroactivity generally involves three factors: "(a) the purpose to be served by the new standards, (b) the extent of the reliance by courts and law enforcement authorities on the old standards, and (c) the effect on the administration of justice of retroactive application of new standards." Stovall v. Denno, 388 U.S. 293, 297, 87 S.Ct. 1967, 1970, 18 L.Ed.2d 1199 (1967). See also, Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965).

> [T]he retroactivity or nonretroactivity of a rule is not automatically determined by the provision of the Constitution on which the dictate is based. Each constitutional rule of criminal

1. The Supreme Court has not decided the question. *See,* Moon v. Maryland, 398 U.S. 319, 90 S.Ct. 1730, 26 L.Ed.2d 262 (1970).

procedure has its own distinct functions, its own background of precedent, and its own impact on the administration of justice, and the way in which these factors combine must inevitably vary with the dictate involved.

Johnson v. New Jersey, 384 U.S. 719, 728, 86 S.Ct. 1772, 1778, 16 L.Ed.2d 882 (1966).

The first factor, which is the foremost one, Desist v. United States, 394 U.S. 244, 249, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969), is not, we think, clearly served by according retroactivity in the context of these cases, for even though *Pearce* emphasizes that the "defendant's exercise of a right of appeal must be free and unfettered," 395 U.S. at 724, 89 S. Ct. at 2080, the new rule's impact is to outlaw retaliatory motivation on the part of the *second* sentencing judge. 395 U. S. at 725, 89 S.Ct. 2072. The prohibition against harsher punishment does not, of course, operate unless and until there is a second trial.

In cases where retroactivity has been accorded to new rules governing the right to appeal—*e. g.*, indigent's right to a transcript on appeal, Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956),[2] and the right to counsel on appeal, Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963)[3]— the old rule had flatly and not speculatively prevented an effective appeal. The forbidden practice in *Pearce* is, of course, hypothetical and can only be demonstrated by a successful appeal and a vindictively inclined second trial judge. We cannot know whether these petitioners would have been successful on appeal and, if so, whether vindictiveness would have entered into a second trial.

We think such a possibility does not make the choice not to appeal an involuntary waiver of that right any more than the possibility of receiving the death sentence under a plea of "not

guilty" makes a guilty plea involuntary. See Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). "Law addresses itself to actualities." Griffin v. Illinois, *supra*, 351 U.S. at 23, 76 S.Ct. 585 (concurring opinion of Frankfurter, J.).

Moreover, there are practical considerations in the administration of criminal justice that the court should not ignore. It never occurred to anyone until *Patton* and *Pearce* were decided that it was unlawful to impose harsher punishment on retrial. On one theory or another—trial de novo or "consent"—virtually all authority was to the contrary. Doubtless the right of appeal was sometimes chilled by the rational apprehension that an appellant might attain a pyrrhic victory, but that is not to say that vindictiveness on retrial was the style of the day rather than the exception.

We are inclined to the belief that the *Pearce* rule is a prophylactic one designed to assure in futuro freedom to appeal and not a rule that goes to the fundamental fairness of the trial. We think we should not lightly assume that there was trial error and that any assumption should be to the contrary. Absent a showing by a petitioner that he had substantial reason to fear actual malice and vindictiveness upon retrial, it seems to us that pragmatism and the second and third factors of *Stovall*, *supra*, argue strongly against retroactivity in the context of these cases. There are too many difficult variables to justify a flat rule that would award every convict a belated appeal no matter how long ago his trial may have occurred, nor whether it is possible to reconstruct the record. These are some of the unknown quantities:

(1) Is there extant a court reporter's notes of the trial?

(2) Is he still alive and, if not, can someone else transcribe them?

---

2. Applied retroactively in Eskridge v. Washington State Board of Prison Terms and Paroles, 357 U.S. 214, 78 S.Ct. 1061, 2 L.Ed.2d 1269 (1958).

3. Applied retroactively in Daegele v. Kansas, 375 U.S. 1, 84 S.Ct. 89, 11 L.Ed.2d 44 (1963).

(3) If the notes are lost or otherwise inadequate, can the trial record be substantially reconstructed?

(4) If a transcript can be produced, considering the presumption of regularity, what is the percentage chance of success on appeal?

(5) How many of those now convicted and who did not appeal and who received less than the maximum penalty will make the colorable claim that their failure to appeal was chilled by the pre-*Pearce* rule?

(6) How is it possible for the state to refute such a claim?

(7) If a new trial is accorded, is it possible for the state to try again one who was convicted five years ago? Ten years ago? Twenty years ago?

We hold *Pearce* to be nonretroactive except with respect to prisoners who actually received harsher punishment after a second trial.

Affirmed.