Richard CHANDLER

v.

UNITED STATES of America.

Civ. No. 70–959–H.

United States District Court,
D. Maryland.

Sept. 1, 1971.

Joseph Forer, Washington, D. C., for petitioner.

George Beall, U. S. Atty., and Leonard M. Linton, Jr., Asst. U. S. Atty., for respondent.

## MEMORANDUM AND ORDER

HARVEY, District Judge.

Richard Chandler, petitioner, has filed a motion herein under 28 U.S.C. § 2255, seeking to vacate the judgment entered and sentence imposed in this Court following his trial and conviction in 1968 of a violation of the Selective Service law. Petitioner was indicted on February 20, 1968 and was charged with failing and neglecting to comply with an order of his local draft board to report for and submit to induction into the Armed Forces. At arraignment, the Court suggested that he be represented by counsel. After an extended colloquy with the Court, petitioner declined to accept appointment of counsel and entered a plea of not guilty to the charge.

Petitioner's case thereupon came on for trial on March 21, 1968 before the Court sitting without a jury. Again, the Court urged petitioner to accept the appointment of counsel to represent him at his trial, but petitioner again refused and insisted on trying the case himself. After some discussion between the Court and petitioner's mother who was present on the morning the case was called for trial, the Court permitted petitioner to represent himself. Petitioner was tried, was found guilty and was sentenced to a term of imprisonment of 4½ years. United States v. Chandler, Criminal No. 27984.

Chandler promptly filed an appeal in which he raised the same question presented at trial, namely, that the Selective Service Act of 1967 was unconstitutional because it sanctioned involuntary servitude contrary to the Thirteenth Amendment to the Constitution. The Fourth Circuit affirmed the conviction in a *per curiam* opinion. United States v. Chandler, 403 F.2d 531 (4th Cir. 1968).

Petitioner started serving his sentence on November 18, 1968. On February 19, 1969, through counsel, he filed a formal motion under Rule 35 to reduce his sentence. In support of such motion, it was alleged that petitioner was "emotionally committed to the position that it was his moral duty to refuse to submit to what he considered to be unjustifiable restrictions on his personal liberty," that he had refused to work at the prison and that he was in the fifth day of a hunger strike which he intended to continue indefinitely. On February 26, 1969, this Court reduced petitioner's sentence to 2½ years. In a letter to counsel, the Court said the following:

"In view of the defendant's curious psychological makeup and actions to date in prison, I have decided to reduce the sentence previously imposed to two and one-half years, mainly because I have concluded that serving all or substantially all of the four and one-half years previously imposed would not serve the interests of the defendant or of society."

On August 14, 1970, petitioner, represented by private counsel, filed the pending motion. He claims that his 1968 conviction was unlawful under Gutknecht v. United States, 396 U.S. 295, 90 S.Ct. 506, 24 L.Ed.2d 532 (1970), because his induction was accelerated. In responding, the government contends that petitioner's induction was not accelerated and that in any event *Gutknecht* should not be applied retroactively to a case of this sort. Before a hearing could be scheduled in this case, petitioner was released from prison on November 18, 1970. Briefs have now been filed, and a hearing held, at which testimony was taken and certain exhibits introduced relating to the manner in which petitioner was ordered to report for induction.[1]

---

1. The record in this case includes the pleadings in petitioner's criminal case (Criminal No. 27984) as well as certain letters between the Court and petitioner or his counsel.

Chandler was born on November 14, 1947. When he attained the age of 18 he duly registered with Local Board No. 54 in Bethesda, Maryland, and was classified II–S on May 4, 1966. On that date, he was a full time student at the University of Minnesota, but he subsequently dropped out of college and was reclassified I–A.[2] On January 6, 1967, petitioner was ordered to report for his physical on January 23, 1967. He did not so report at that time, but was not then declared a delinquent.

On September 18, 1967, he was ordered for the second time to report for a physical examination, the scheduled date being October 3, 1967. When he failed to report on this occasion, he was declared to be a delinquent by notice dated October 18, 1967. On November 21, 1967, he was ordered to report for induction on December 6, 1967. Following receipt of this notice, petitioner telephoned his local board on December 11, 1967 advising that he refused to come in for pre-induction or for induction. On February 13, 1968, Chandler was called by an Agent of the Federal Bureau of Investigation concerning his status as a delinquent. Chandler told the Agent that he would not submit to induction in the Armed Forces and that he would not contact his local board and follow their instructions to remove his delinquency. Criminal prosecution thereafter followed, the indictment being filed in this Court on February 20, 1968.

Although Chandler is no longer in custody as a result of such conviction, the government has not contended here that this Court does not have jurisdiction to decide this case under 28 U.S.C. § 2255. When the motion was filed on August 14, 1970, petitioner was in custody, and he was still confined when the government filed its answer on September 21, 1970. However, before a hearing could be scheduled, petitioner was released from confinement, having served his sentence.

There is some doubt whether petitioner is entitled to relief under § 2255 now that he is no longer in custody, particularly in the absence of any allegations or proof as to the type of "restraint" being now suffered by petitioner. See United States v. Flanagan, 305 F.Supp. 325, 326–327 (E.D.Va.1969); Carafas v. LaVallee, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968); Baker v. United States, 429 F.2d 1278, 1279, f. n. 1 (9th Cir. 1970); Federal Habeas Corpus, 83 Harv.L.Rev. 1038, 1076–1078 (1970). However, since this point has not been briefed or argued here and in view of this Court's resolution of the other questions presented, it will be assumed for the purposes of this case that relief would be available to Chandler if he were to succeed on the merits in this § 2255 proceeding.

This Court is therefore faced at the outset with the question whether the *Gutknecht* decision should be applied to Chandler's 1968 conviction in this § 2255 proceeding. The *Gutknecht* case was decided by the Supreme Court on January 19, 1970, almost two years after petitioner's indictment was filed. The Supreme Court held that while the Selective Service Act of 1967 provided for the criminal prosecution of delinquent Selective Service registrants, it did not authorize the regulations permitting accelerated induction. Petitioner here contends that he was declared a delinquent by his local board, that his board then accelerated his induction date and that therefore his conviction for failing to report on such date is invalid under *Gutknecht.*

The question of the retroactivity of newly enunciated principles of criminal law is a troublesome one. United States v. Frazier, 304 F.Supp. 467 (D.Md.1969). The first major case to consider this issue was Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965). After reviewing its previous decisions

---

2. In a letter from the Office of the Dean of students at such University, petitioner's father was told: "One of his major problems appeared to be a sensitivity to au-

thority figures. The resultant anger or hostility appeared to overwhelm him and block production planning."

on the question, the Supreme Court said this (at page 627, 85 S.Ct. at page 1736):

> "Under our cases it appears (1) that a change in law will be given effect while a case is on direct review, *Schooner Peggy* [United States v. Schooner Peggy, 1 Cranch 103, 2 L. Ed. 49], *supra,* and (2) that the effect of the subsequent ruling of invalidity on prior final judgments when collaterally attacked is subject to no set 'principle of absolute retroactive invalidity' but depends upon a consideration of particular relations * * * and particular conduct * * * of rights claimed to have become vested, of status, of prior determinations deemed to have finality'; and 'of public policy in the light of the nature both of the statute and of its previous application.' Chicot County Drainage Dist. v. Baxter State Bank, *supra,* [308 U.S. 371] at 374, [60 S.Ct. 317 at 319, 84 L.Ed. 329]."

Summarizing, the Court in *Linkletter* concluded "that the Constitution neither prohibits nor requires retrospective effect." (at page 629, 85 S.Ct. at page 1737). In Stovall v. Denno, 388 U.S. 293, 297, 87 S.Ct. 1967, 1970, 18 L.Ed.2d 1199 (1967), the Supreme Court listed the criteria for resolving a question concerning the retroactivity of a new rule affecting a criminal trial as "(a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards."

Applying those principles to the facts here, it would appear that the purpose of the *Gutknecht* decision was to halt the practice followed by Selective Service officials of declaring registrants delinquents and thereby accelerating their induction. The Supreme Court declared invalid the regulations permitting such practice, finding that existing legislation did not authorize the promulgation of such regulations. As a result of the *Gutknecht* decision, regulations have been revised, and registrants are no longer inducted because of delinquency. See United States v. Dobie, 444 F.2d 417, f. n. 4 (4th Cir. 1971). To apply the *Gutknecht* decision retroactively to petitioner here would not further the purpose of the decision, which was not concerned with a constitutional rule that would be widely applicable to criminal trials in general.

Some courts, in determining whether a rule should be given retroactive effect, have considered whether such an effect would preclude the conviction of innocent persons. In United States v. Miller, 406 F.2d 1100 (4th Cir. 1969), the Court applied the rule in Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968) retrospectively, noting "the virtual impossibility of a lawful conviction in any new trial" if the rule there were to be given retroactive application. At page 1104 of 406 F.2d, the Court said the following:

> "The clear intimation is that a new rule *should* be applied retroactively where the persons possibly affected by it are few in number and where applying the rule would lead to a different result on retrial in most cases."

Here, the petitioner was a draft resister who consistently took the position that he would neither submit to induction nor comply with other orders of his draft board.[3] In his motion for a reduction of his sentence under Rule 35, petitioner readily conceded that he had no intention of complying with the Selective Service law, in the following language:

> "The defendant is emotionally committed to a position that it is his overwhelming moral duty to refuse to submit to what he considers unjustifiable restrictions or demands on personal liberty, no matter what the consequences of the refusal. The defendant's refusal to report for and submit to induction was based on this commitment."

---

3. In a letter to the Court dated March 17, 1969, petitioner referred to himself as "a draft resister."

This case then is not one in which a previously convicted petitioner would have escaped conviction altogether if the new principles were applied to him retroactively. Had *Gutknecht* been the law at the time of petitioner's trial and had the indictment in Criminal No. 27984 been dismissed thereunder, Chandler would have been subject to immediate re-indictment for failing to obey the local board's Order of September 18, 1967 to report for a pre-induction physical on October 3, 1967.[4] Such an indictment would not have been subject to attack on the grounds that such Order involved any delinquency acceleration. Indeed, petitioner's counsel argued to the Court in this case that the government should have prosecuted Chandler initially for failing to comply with that Order rather than the Order set forth in the indictment.[5]

With reference to the second and third factors mentioned by the Supreme Court in *Stovall*, it appears that delinquency regulations have been in effect substantially in their present form since the enactment of the Selective Service Act of 1948 and are similar to those promulgated in 1943 and applicable during World War II. See United States v. Rumon, 315 F.Supp. 1126, 1128 (W.D. Penn.1970). As such, Selective Service officials and the courts have relied upon and applied such regulations in countless numbers of cases. As a result of *Gutknecht*, the practice has now been stopped. However, if all draft resisters who had been called for induction under the delinquency regulations and later convicted and served their time were now to bring § 2255 actions to wipe these convictions from their records, the federal courts would undoubtedly assume a considerable burden. In considering the effect of a decision in favor of retroac-

tivity on the administration of justice, this Court would note what the Fourth Circuit said in United States v. Miller, *supra*, 406 F.2d at page 1104, commenting on Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966):

> "The [Supreme] Court therefore reasoned, that, on balance, retroactive application of these rulings would not be warranted. It considered, on the one hand, the extremely disruptive effect if new trials were awarded to the thousands of state prisoners potentially affected by the new rulings, and, on the other hand, the small likelihood of a different result on retrial in most cases because of already existing safeguards."

Furthermore, counsel concedes in this case that if this Court strikes petitioner's conviction, petitioner may still, because of his present age, be called for induction into the Armed Services and, if he refuses to report, prosecuted for such refusal. The psychiatric reports submitted to the Court together with a lengthy statement from petitioner's parents indicate that petitioner has resisted authority almost all his life. Undoubtedly, he would not obey a future order to report for induction and would again subject himself to the time-consuming process of trial, sentence and appeal. If North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.E.2d 656 (1969), is applied, the result after further legal proceedings will be the imposition of the same 2½ year sentence that petitioner has now served.[6]

Granting the motion here would be of no ultimate benefit to petitioner yet would have an adverse effect on the administration of justice in this and other Courts in which similar actions would

---

4. Furthermore, if his 1968 conviction is now set aside, he may still be prosecuted today for failing to report for his physical in 1967.

5. In his supplemental memorandum, counsel suggests that petitioner may have had a defense to this particular charge. The record here clearly indicates otherwise.

Petitioner had no intention of complying with any Order of his local board in the Fall of 1967.

6. Under the *Pearce* case, petitioner might even be subject to a greater sentence, depending on his activities since his release from federal prison.

be maintainable.[7] Chandler has chosen to express extreme disapproval of the draft system and the Vietnam War by refusing to cooperate in any way with draft officials. He has thereby subjected himself to prosecution and imprisonment and has now fully served his time. Little good can result to him, to the Selective Service System or to society generally if his previous conviction were now to be wiped out, and if Chandler and draft officials were to be now returned to the respective positions from which they confronted each other in November, 1967.

It is of course true that in any future criminal proceeding petitioner would be innocent of the charge until proven guilty beyond a reasonable doubt. But this is not a criminal case. The pending action is a civil proceeding in which practical considerations are a proper subject of inquiry in determining whether a new principle of criminal law should be given retroactive application. As Judge Craven said in James v. Copinger, 441 F.2d 23, at page 25 (4th Cir. 1971):

> "Moreover, there are practical considerations in the administration of criminal justice that the court should not ignore. It never occurred to anyone until *Patton* [Patton v. North Carolina, 4 Cir., 381 F.2d 636] and *Pearce* were decided that it was unlawful to impose harsher punishment on retrial. * * * [I]t seems to us that pragmatism and the second and third factors of *Stovall, supra,* argue strongly against retroactivity in the context of these cases."

In that case, the Fourth Circuit concluded that a new criminal law rule may be applied retroactively to certain petitioners but not to others. The Court held in *James* that North Carolina v. Pearce, *supra*, should be applied retroactively to petitioners who have received greater sentences after successfully attacking their first convictions but not to petitioners who claim they declined to appeal because of the fear of receiving greater sentences upon re-trial. In its opinion, the Fourth Circuit quoted with approval from Johnson v. New Jersey, 384 U.S. 719, 728, 86 S.Ct. 1772, 1778, 16 L.Ed.2d 882 (1966), as follows:

> "[T]he retroactivity or nonretroactivity of a rule is not automatically determined by the provision of the Constitution on which the dictate is based. Each constitutional rule of criminal procedure has its own distinct functions, its own background of precedent, and its own impact on the administration of justice, and the way in which these factors combine must inevitably vary with the dictate involved."

██ Nor does it appear that petitioner suffered any prejudice when he was ordered to report for induction on December 6, 1967. In this connection, it is necessary to examine the evidence relating to the question whether petitioner's induction order was in fact accelerated. Petitioner argues that the burden is upon the government to prove beyond a reasonable doubt that his induction order was not accelerated. This would undoubtedly be true in a criminal prosecution. See United States v. Dobie, *supra*, and the earlier *per curiam* opinion in that same case, 429 F.2d 32 (4th Cir. 1970). But the scope of review under § 2255 is ordinarily limited to errors of constitutional dimension going to the fundamental fairness of the trial. Hall v. United States, 410 F.2d 653, 657 (4th Cir. 1969); Sanders v. United States, 230 F.2d 127 (4th Cir. 1956); see Kaufman v. United States, 394 U.S. 217, 89 S.Ct. 1068, 22 L.Ed.2d 227 (1969). In the absence of circumstances indicating that a conviction is so devoid of evidentiary support as to raise a due process issue, the sufficiency of the evidence is not cognizable in a § 2255 attack. Hall

---

7. In Thompson v. Parker, 308 F.Supp. 904 (M.D.Pa.1970), the Court denied retroactive effect to O'Callahan v. Parker, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969), emphasizing the effect on the administration of justice. *O'Callahan* held that the military courts have no jurisdiction to try a military man charged with a crime cognizable in a civilian court and having no military connection.

v. United States, *supra*, at page 660; Dansby v. United States, 291 F.Supp. 790, 793 (S.D.N.Y.1968). A similar principle has been applied in habeas corpus cases in which the sufficiency of the evidence to support a conviction in a state court has been challenged. Grundler v. State of North Carolina, 283 F.2d 798 (4th Cir. 1960); Harrison v. Boles, 307 F.2d 928 (4th Cir. 1962).

██ In a § 2255 proceeding, the petitioner has the burden of proving facts which would support the allegations contained in his motion. Day v. United States, 428 F.2d 1193, 1195 (8th Cir. 1970); Daughtry v. United States, 242 F.Supp. 771 (D.N.C.1964), cert. den. 385 U.S. 881, 87 S.Ct. 166, 17 L.Ed.2d 108 (1966). Here it is not clear from the evidence whether petitioner's induction order was in fact accelerated. The proof does show that petitioner was declared a delinquent and was subsequently ordered to report for induction. But the proof also shows that a number of registrants, who were born after or about the same time as Chandler and who were not classified delinquents, were called for induction on the same day as he was or earlier. What these facts establish is that assuming Chandler's call was accelerated, there was no resulting prejudice to him inasmuch as others who were born at or about the same time were called for induction at the same time. Such facts do not of course prove that Chandler's call was not accelerated and would have little significance if the Court had before it a criminal case in which the government would have the burden of proving every essential element of the crime. See United States v. Dobie, *supra*. But where as here the issue is the retroactivity in a § 2255 case of new law established after conviction and appeal, the question of prejudice to the petitioner is a relevant consideration. The record here shows that petitioner was not treated unfairly when his case is compared with others in his age bracket who registered with Local Board No. 54 at the same time he did.

This Court is aware that other district courts have given retroactive effect to the *Gutknecht* decision. Andre v. Resor, 313 F.Supp. 957 (N.D.Calif.1970); United States v. Kelly, 314 F.Supp. 500 (E.D.N.Y.1970); Bradley v. Laird, 315 F.Supp. 544 (D.Kan.1970); Foster v. United States, 320 F.Supp. 646 (D.Conn. 1970). No decisions by any circuit courts to this effect have been cited to this Court. However, the facts in none of those cases indicated that the decision in favor of retroactivity would have the practical consequences that such a decision would have here. In none of those cases, did it appear that an admitted draft resister was involved. Indeed, in the *Andre* and *Bradley* cases, the registrant involved had submitted to induction and was seeking his discharge in a habeas corpus proceeding.[8] In each of those cases, the delinquency resulted from the failure of the registrant to have his registration certificate in his possession, and it did not appear that the petitioner in question had admitted violating an order of his local board other than the order to report. Here, the petitioner twice did not report for his physical examination and had advised his board that he refused to come in for such physical or for induction.

██ For these reasons, this Court concludes that the *Gutknecht* decision should not be applied retroactively here. It is therefore this 1st day of September, 1971, by the United States District Court for the District of Maryland,

Ordered that the pending motion for relief under 28 U.S.C. § 2255 be and the same is hereby denied, with costs.

---

8. In *Kelly*, the registrant, although refusing induction, expressed no opposition to alternate service and indicated that he was religiously inclined.