(e) A racially-identified copy of any eligibility list for Firefighter established during that reporting period.

8. In case of conflict between the terms of this Decree and the Statutes of the State of Missouri, any rules or regulations of the Civil Service Commission, or any charter or ordinances of the City of St. Louis respecting the employment or employees of the fire department, the terms of this Decree shall prevail.

9. At any time after five (5) years from the date of entry of this partial decree, defendants may move this Court on forty-five (45) days notice to plaintiffs for dissolution of this partial decree; and upon their showing that the goals of this decree in providing equal employment opportunities have been fully achieved, the decree may be dissolved.

IT IS FURTHER ORDERED, ADJUDGED, and DECREED that defendants shall have judgment against plaintiffs on all remaining issues in these causes.

IT IS FURTHER ORDERED, ADJUDGED, and DECREED that each party shall bear its own costs herein.

Vernon E. **WALDEN**

v.

**UNITED STATES of America.**

**Civ. A. No. 75–151.**

United States District Court,
E. D. Pennsylvania.

June 30, 1976.

Thomas M. Nocella, Philadelphia, Pa., for plaintiff.

William J. McGettigan, Asst. U.S. Atty., Philadelphia, Pa., for defendant.

## OPINION

DITTER, District Judge.

This case comes before the court pursuant to 28 U.S.C. § 2255 on petitioner's motion to vacate the conviction which was entered following his plea of guilty to the charge of wilfully attempting to evade the payment of income taxes for the year 1971.

Three [1] grounds are advanced in support of the motion. After carefully considering the evidence adduced at the hearing, the memoranda, and oral arguments of counsel, I conclude that petitioner is entitled to no relief.

Walden first asserts that at the time he entered his plea of guilty and for several weeks prior thereto he was receiving dosages of Valium and "sleeping powder" on a daily basis from the medical staff at Graterford State Prison as part of the treatment for a severe nervous condition. He argues that these daily drug treatments "so eroded [his] ability to reason and understand as to deprive his plea of [having the quality] of a knowing, voluntary act." [2] Despite the fact that before accepting petitioner's plea I questioned him and counsel thoroughly, and satisfied myself that petitioner was fully competent,[3] I nonetheless accepted Magistrate Naythons' recommendation that a hearing be held on this issue. See *Sanders v. United States*, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963); *Lopez v. United States*, 439 F.2d 997 (9th Cir. 1971); *United States v. Miranda*, 437 F.2d 1255 (2d Cir. 1971), cert. denied 409 U.S. 874, 93 S.Ct. 207, 34 L.Ed.2d 126 (1972).

■ A person seeking to vacate his conviction bears the burden of proof upon each ground presented for relief. *Day v. United States*, 428 F.2d 1193, 1195 (8th Cir. 1970); *Chandler v. United States*, 332 F.Supp. 397, 403 (D.Md.1971); cf. *Lepisco v. United States*, 426 F.2d 769, 771 (3d Cir. 1970); *United States ex rel. Tillman v. Alldredge*, 350 F.Supp. 189 (E.D.Pa.1972). Therefore, Walden must show that at the time his plea was entered he was so influenced by drugs as to be incompetent to stand trial or incapable of understanding the nature and consequences of his plea. *Grennett v. United States*, 131 U.S.App. D.C. 202, 403 F.2d 928, 930 (1968); see also *United States ex rel. Fitzgerald v. LaVallee*, 461 F.2d 601, 604 (2d Cir.) cert. denied 409 U.S. 885, 93 S.Ct. 121, 34 L.Ed.2d 142 (1972); *United States ex rel. Sadler v. United States*, 315 F.Supp. 1377, 1379 (E.D. Pa.1970). Evidence of some drug use is not enough to establish as a matter of law that the defendant is lacking such competency or capacity. *Grennett*, supra, 403 F.2d at 931. The test of competency, as stated in *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) is

". . . whether he [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him."

*Id.* at 402, 80 S.Ct. at 789. With these principles in mind, I proceed to a consideration of the evidence adduced at the hearing.

Three physicians and a pharmacologist were called as witnesses. Dr. Harvey Tapolow, chief psychiatrist at Graterford State Prison, saw Mr. Walden during the time Walden was incarcerated there. Dr. Tapolow had prescribed Valium, a tranquilizer which was discontinued 11 days prior to Walden's entry of his plea of guilty, Librium, a tranquilizer used in place of the Valium, and Dalmine, a sleeping medicine given at bedtime. It was Dr. Tapolow's opinion that these medications would not affect Mr. Walden's thought processes and that a reading of the transcript for the day in

---

1. Petitioner initially sought to vacate his conviction on a fourth ground; viz, that at the time he entered his plea petitioner did not understand the meaning of the word "wilfully" as used in the indictment and did not intend to plead guilty to the crimes charged therein. The complaint was referred to Magistrate Edwin E. Naythons, as permitted by Local Rule 46. Magistrate Naythons found that the colloquy between the court and petitioner at the time of his plea conclusively showed that petitioner was entitled to no relief and therefore concluded that a hearing on this issue was not required. I adopted the Magistrate's conclusions in this regard and, although the petitioner has sought to raise this issue again in his document styled "Objections to the Report of the Magistrate," I find petitioner's arguments frivolous and will not discuss this issue further other than to reaffirm my agreement with Magistrate Naythons' decision.

2. Complaint, Paragraph 13.

3. See Report and Recommendation of Magistrate Naythons at pages 7–11.

question, June 15, 1973, showed Walden was competent to enter a plea of guilty. He felt that had there been any effect from the medications it would have produced drowsiness, slurred speech or drooping eyes. At the time of the plea, neither Walden's attorney nor I noticed any such symptoms.

Similar medical opinions were received from Dr. Dennis M. Jurczak, a board certified psychiatrist employed by the Bureau of Prisons who had treated Mr. Walden while he was incarcerated at Danbury, and Dr. Francis H. Hoffman, a board certified psychiatrist who is head of the psychiatric division of the Philadelphia Court of Common Pleas. Only Dr. Martin Adler, a pharmacologist at the Temple University Medical School, thought that the drug dosages were in the "upper limits" or a "little high" and that there might be an effect on Mr. Walden's ability to think or make important decisions. Dr. Adler had never seen Mr. Walden nor had Dr. Adler read the notes of testimony from the day Mr. Walden's plea was entered. Dr. Adler spoke of the possible effects of the medications, but did not say that such effects had been produced in Mr. Walden. To make the record clear, however, insofar as there is any conflict between the testimony of Dr. Adler and Doctors Tapolow, Jurczak, and Hoffman I accept the latter and reject the former.

▋ It is clear that the petitioner failed to satisfy his burden of proof that he was mentally or emotionally incapacitated. Mr. Walden asserts that if he had been in his right mind and thinking clearly, he would not have pleaded guilty. He also states that he recalls recovering from this condi-

tion sometime after June 15, 1973. Despite such statements, the testimony adduced at the evidentiary hearing overwhelmingly establishes that Mr. Walden was not rendered incompetent by the medications he took.

▋ Petitioner next argues that his plea was induced by an "agreement" between his counsel and the United States Attorney's office as to the sentence which petitioner would receive, an agreement which was not honored.[4] If true, these allegations would render Walden's plea involuntary. *Santabello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971); *United States v. Valenciano*, 495 F.2d 585, 587–88 (3d Cir. 1974); *Moorehead v. United States*, 456 F.2d 992, 995 (3d Cir. 1972). However if petitioner's counsel merely "predicted" the sentence Walden would likely receive after a guilty plea, the plea would not thereby be rendered involuntary. *Paradiso v. United States*, 482 F.2d 409, 412 (3d Cir. 1973); *Masciola v. United States*, 469 F.2d 1057, 1059 (3d Cir. 1972).

▋ At the hearing,[5] petitioner's attorney, Harry R. Seay, Esquire, testified that he had neither made a deal with the United States Attorney, nor had he represented to Walden that he would receive a sentence of two years or less if he pleaded guilty. Mr. Seay did admit that he had advised Walden that if he pleaded guilty and cooperated with the government's drug strike force, his cooperation would be made known to the Court at the time of sentencing.[6] Mr. Seay said that he had had numerous discussions with Mr. Oliver Burt and Mr. J. Clayton Undercofler, Assistant U.S. Attorneys, and felt that the government had a very strong

---

**4.** Specifically, petitioner avers that he was promised by his attorney that he would receive a sentence of 6 to 12 months, or at least less than two years.

**5.** Petitioner's guilty plea was entered before the *Paradisio* and *Valenciano* decisions. Because I did not follow the specific procedures outlined in those decisions, a hearing on Walden's contention that the plea was involuntary was necessary.

**6.** The transcript of the plea proceeding reveals that the court, in the presence of petitioner, his counsel and the government's attorney, was

advised that Mr. Walden had agreed to cooperate with the government and that any such cooperation would be brought to the court's attention at the time of sentencing for such use and consideration as I deemed appropriate. Beyond that no other agreements had been reached. (N.T. June 15, 1973, pages 27–28.) Petitioner does not and could not contend that the nature and extent of his cooperation (or lack of it) were not in fact brought to the court's attention. (See N.T.Crim. No. 72–671, September 10, 1973, at pages 12–22; N.T. October 23, 1973, at pages 4–5).

case. The fact that the government was interested in Mr. Walden as a source of information reinforced his belief that cooperation by Walden, along with his guilty plea, could possibly result in a lower sentence. Although Mr. Walden's testimony at the hearing ran directly counter to that of his attorney, I find Mr. Seay's testimony to be creditable and reject Mr. Walden's insofar as it conflicts with that of Mr. Seay.[7] The advice given to petitioner by Mr. Seay was perfectly appropriate under the circumstances and is in fact the very type of practical evaluation of a client's situation that a competent attorney should provide. Such advice clearly amounts to no more than a prediction "based on his [counsel's] experience in criminal matters, on his knowledge of the tendencies of the sentencing judge, or on any of a number of other factors unrelated to any putative agreement with the prosecutor," *United States v. Hawthorne*, 502 F.2d 1183, 1188 (3d Cir. 1974), and could not reasonably have been construed otherwise by Mr. Walden. Compare *United States ex rel. Oliver v. Vincent*, 498 F.2d 340, 345–46 (2d Cir. 1974); *Mosher v. LaVallee*, 351 F.Supp. 1101, 1111 (S.D.N.Y.1972), aff'd 491 F.2d 1346 (2d Cir.), cert. denied 416 U.S. 906, 94 S.Ct. 1611, 40 L.Ed.2d 111 (1974).

Petitioner's final ground for relief is that he was denied the effective assistance of counsel.[8] Specifically, Walden argues that Mr. Seay told him that he had made no investigation of the charges against petitioner nor made any preparations for conducting a defense. Petitioner contends that he was not guilty of the crime charged and that if Mr. Seay had made an appropriate investigation he would have discovered that the funds alleged in the indictment to be income were in fact the proceeds of loans made to him by others.

■ In this Circuit, "the standard of adequacy of legal services as in other professions is the exercise of the customary skill and knowledge which normally prevails at the time and place [footnote omitted]." *Moore v. United States*, 432 F.2d 730, 736 (3d Cir. 1970); see also *United States ex rel. Hart v. Davenport*, 478 F.2d 203, 210 (3d Cir. 1973); *United States ex rel. Green v. Rundle*, 434 F.2d 1112, 1113 (3d Cir. 1970). This standard applies both to counsel's courtroom performance and his out-of-court investigation and preparation of the case. *Moore*, supra, 432 F.2d at 739. Petitioner has failed to meet his burden of proof on this claim also. See *Mims v. United States* (E.D.Pa.1976) and cases cited therein.

■ There is no credible evidence that Mr. Seay ever informed petitioner that no investigation had been conducted or that no preparation of the defense had been made. As noted earlier, Mr. Seay testified that he had met with Assistant United States Attorneys C. Oliver Burt and J. Clayton Undercofler on several occasions and received evidence of how strong the government's case against petitioner was. Seay stated that he conferred with the petitioner at Graterford and at his office on several occasions. I find that Mr. Seay exercised reasonable judgment on his client's behalf in encouraging Mr. Walden to plead guilty and that Seay therefore satisfied the requirement of normal competency. To the extent petitioner's testimony suggests the contrary, I reject it.

---

7. Walden stated that Seay had told him initially that he would receive six to twelve months' imprisonment and a fine if he pleaded guilty, and that the "willfulness" charge in the indictment had been eliminated. Later, he avers, this term of imprisonment was increased to two years under the "deal" when Seay discovered that Mr. Walden did not have the information the government wanted. Although Walden maintains that he remembers these representations prior to and after he entered his guilty plea, he is without adequate memory when questioned about the plea reception proceedings, where I examined him in great detail. He was on medication before and after the June 15, 1973, hearing, and I can find no reason why his memory could be so clear in one instance and not in another.

8. The Report and Recommendation of Magistrate Naythons, see note 1, supra, did not refer to petitioner's claim of ineffective assistance of counsel. By order dated April 22, 1975, I added this claim to the other claims pending before the court.

For the reasons set forth above, petitioner's motion to vacate his conviction must be denied.